**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 07-01154 (RMU) |
| | * | |
| CENTRAL INTELLIGENCE AGENCY | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *    *    *    *    *    *    * | *    *    *    *    * | |

## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff The James Madison Project ("JMP")[1] commenced this litigation pursuant to

the Freedom of Information Act ("FOIA") to obtain copies of defendant Central

Intelligence Agency's ("CIA") internal regulations that govern the conduct and activities

of its employees. By and large these documents do not pertain to – nor implicate – the

operational functions of the CIA that necessitate heightened sensitivity or secrecy.

Instead, the scope of documents sought by JMP pertains largely to procedures regarding

personnel matters, disciplinary proceedings, record declassification, and pre-publication

review procedures.

To be sure, these topics are a far cry from exposing rules authorizing covert

operations in foreign lands or sensitive sources and methods of collecting intelligence.

The documents are at their essence reflective of mundane, but significant, day-to-day

---

[1] JMP (*www.jamesmadisonproject.org*) is a Washington, D.C.-based non-profit organization that was created in 1998, for the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing. Much of the work undertaken by JMP involves litigation under FOIA. The principles underlying the objectives of the JMP are derived from the 1997 findings of The Commission on Protecting and Reducing Government Secrecy, which are more fully discussed below.

operation of what life is like for an employee within the CIA. In our democratic society, every government agency is accountable for its procedures and practices as to how it treats its employees (and contractors), and one would hope the CIA is no different. Yet unlike the majority of federal agencies whose internal regulations can actually be reviewed online by anyone who has access to the Internet, the CIA shrouds its internal functions in levels of secrecy designed to ensure there are no open windows into its activities, not even with respect to how it applies mandatory statutes to its personnel that are required to be implemented on a federal level without modification.

The CIA has continued its cloak and dagger exercises in order to minimize its accountability and now seeks summary judgment through the invocation of several FOIA exemptions. The record reflects, however, that the CIA's search for responsive records was inadequate and its withholdings were inappropriately broad. As a result, this Court should deny the CIA's request for summary judgment, order the release of additional information and allow for discovery to identify the proper scope of its response.

## **<u>INTRODUCTION</u>**

The circumstances presented in this litigation cry out for recognition by this Court that, metaphorically, the Emperor has no clothes. "National Security" is an important concept within which is embodied the principle that our nation must be protected from those who would do it and its citizens proscribed harms. The concept should not, and cannot be allowed to be turned into a catch-phrase which excuses any and all forms of illegitimate secrecy in the face of both law and common sense.

**The Excessiveness Of Secrecy**

The late Senator Daniel Patrick Moynihan, long regarded as a leading scholar on issues of secrecy, served as the distinguished chair of The Commission on Protecting and Reducing Government Secrecy. The Commission's 1997 Report is widely regarded as the most important analysis of U.S. Government classification and secrecy trends published in the last four decades, and it was clear in its condemnation of secrecy for secrecy's sake. The Commission warned of the specific dangers to democracy presented by illegitimate classification:

> Excessive secrecy has significant consequences for the national interest when, as a result, policymakers are not fully informed, government is not held accountable for its actions, and the public cannot engage in informed debate. This remains a dangerous world; some secrecy is vital to save lives, bring miscreants to justice, protect national security, and engage in effective diplomacy. Yet as Justice Potter Stewart noted in his opinion in the Pentagon Papers case, *when everything is secret, nothing is secret*. Even as billions of dollars are spent each year on government secrecy, the classification and personnel security systems have not always succeeded at their core task of protecting those secrets most critical to the national security. The classification system, for example, is used too often to deny the public an understanding of the policymaking process, rather than for the necessary protection of intelligence activities and other highly sensitive matters.

Report of The Commission on Protection on Protecting and Reducing Government Secrecy xxi (GPO, 1997)("*Commission Report*")(emphasis added).

The Commission concluded that "[t]he best way to ensure that secrecy is respected, and that the most important secrets remain secret, is for secrecy to be returned to its limited but necessary role. Secrets can be protected more effectively if secrecy is reduced overall." Id. The Commission enumerated the advantages of an American democratic system that permits the withholding of information only if its publication would truly cause harm to the nation.

3

> Greater openness permits more public understanding of the Government's actions and also makes it more possible for the Government to respond to criticism and justify those actions. It makes free exchange of scientific information possible and encourages discoveries that foster economic growth. In addition, by allowing for a fuller understanding of the past, it provides opportunities to learn lessons from what has gone before— making it easier to resolve issues concerning the Government's past actions and helping prepare for the future.

Id. The current applicable Executive Order 13,292, which modified Executive Order 12,958, that governs the classification of information equally supports this premise. "Protecting information critical to our Nation's security remains a priority. In recent years, however, dramatic changes have altered, although not eliminated, the national security threats that we confront. These changes provide a greater opportunity to emphasize our commitment to open Government." Id.

Despite these aphorisms, over the years federal agencies such as the CIA have consistently ignored the warnings against overclassification voiced by Justice Stewart and others, at times taking secrecy into the realm of tragic comedy. By way of illustration, some of the more humorous examples of unwarranted excessive secrecy exercised by the past several Administrations have included:

- The U.S. Army classifying a study on archery under the heading "silent, flashless weapons." David Wise THE POLITICS OF LYING 67 (Random House, 1973)("*Politics of Lying*").

- The U.S. Navy classifying a report on sharks that was derived entirely from publicly available sources, purportedly to keep the documents from falling into the possession of the Soviet Navy, but more likely to keep the information from discouraging recruitment. Id. at 67-68.

- The Joint Chiefs' classifying as "TOP SECRET" a report which criticized the gross abuses of secrecy classification at all levels in the military. SANFORD J. UNGAR, THE PAPERS & THE PAPERS 219 (Columbia Univ. Press/Morning side ed., 1989).

- The Pentagon adamantly refusing to publish information that acknowledged that NASA had sent monkeys into space, despite the fact that the Washington Zoo had

already identified its monkeys with a plaque praising their participation in rocket experiments in the U.S. space program. The *Washington Post* reported that the Pentagon explained it was trying to preserve the U.S. relationship with India, where certain obscure sects still practiced "monkey worship." *Politics of Lying*, at 67-68.

- The classifying of White House menus as "Top Secret." Id. at 70.

- Weather reports produced by an aid to General Eisenhower during World War Two still being classified even thirty years after the fact. *Commission Report*, at 52.

- Journalist and former hostage Terry Anderson being denied access to files on his capture and release. After months of waiting for a response to his requests, he did finally receive copies of his own press clips which had been kept in classified government files. Id.

### PROCEDURAL BACKGROUND

The factual and procedural background concerning JMP's FOIA request at issue in this litigation is set out in detail in the CIA's Memorandum in Support of Motion for Summary Judgment (filed April 25, 2008)("CIA's Memo"), the CIA's Declaration of Joseph W. Lambert (dated April 24, 2008)("Lambert Declaration") and JMP's Rule 56(f) Declaration of Executive Director Mark S. Zaid, Esq. ("Zaid Rule 56(f) Decl."), all of which are incorporated herein by reference.[2] The scope of JMP's request was limited, by and large, to regulations that encompassed personnel and declassification procedures, as well as operational procedures for two well-publicized information review panels and the CIA's implementation of two public disclosure statutes.

The CIA's description of the procedural background of this litigation, while factually correct, glosses over some glaring points of concern. After filing the initial request on May 18, 2000, JMP was forced to endure over two years of administrative delay before the CIA finally issued a substantive determination and denied the request in its entirety

---

[2] The factual statements made in the CIA's Memo and the Lambert Declaration are incorporated only in relation to pages 2 through 4 and ¶¶11, 13-14, respectively, and only to the extent that they do not constitute legal characterizations and conclusions.

under the auspices of FOIA Exemption Three. Zaid Rule 56(f) Decl. at ¶¶5-6, attached as

Exhibit "1". After JMP timely filed an administrative appeal, it was forced yet again to

endure continued administrative delay, as the CIA took no identifiable action on the

appeal for nearly five years. Id. at ¶8. Arguably faced with indefinite administrative

obfuscation by CIA and the eminent expiration of the six year statute of limitation, JMP

chose to exercise its rights under FOIA and file suit before this Court. Id.

Due to the commencement of litigation, the CIA conducted a search and identified

sixty-seven regulations as being responsive to JMP's request. CIA's Memo at 3. The CIA

chose to disclose – either in their entirety or with redactions - fifty-three of the

regulations, and withheld twenty-three remaining regulations in their entirety. Id. To

justify the redactions and withholdings, the CIA invoked FOIA Exemptions One, Two

and Three. Id. at 3-4. JMP is challenging both the adequacy of the CIA's search as well

as its invocation of FOIA Exemptions One, Two and Three.

## **ARGUMENT**

The CIA has moved for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure. Summary judgment should be granted only if the moving party has

shown that there are no genuine issues of material fact and that the moving party is

entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986); Waterhouse v. Dist. of Columbia, 298 F.3d 989, 991

(D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court

must view all facts in the light most favorable to the nonmoving party. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party's

opposition, however, must consist of more than mere unsupported allegations or denials

and must be supported by affidavits or other competent evidence setting forth specific

facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp.,

477 U.S. at 324.

In a FOIA case, the Court exercises *de novo* review and summary judgment is only

available to a defendant agency that has fully discharged its obligations under FOIA. See

Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983); Wolf v. CIA,

473 F.3d 370, 374 (D.C. Cir. 2007).

**I.   THE CIA FAILED TO CONDUCT AN ADEQUATE SEARCH FOR
       RESPONSIVE RECORDS AND GENUINE ISSUES OF MATERIAL FACT
       REMAIN PRECLUDING SUMMARY JUDGMENT AT THIS TIME**

There is no dispute regarding the overarching case law pertaining to the adequacy of

an agency's search for purposes of summary judgment. The burden rests upon the

defendant agency to "show beyond a material doubt that it has conducted a search

reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351.

See also Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1988)

("reasonableness" standard is applied to determine the adequacy of a search

methodology, consistent with congressional intent tilting the scale in favor of disclosure).

Put more succinctly, the CIA "must show that it has made a good faith effort to conduct a

search for the requested records, using methods which can be reasonably expected to

produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68

(D.C. Cir. 1990).

It is also undisputed that a court may rely upon agency affidavits in adjudicating the

adequacy of the search, Founding Church of Scientology v. Nat'l Sec. Agency, 610 F.2d

824, 836 (D.C. Cir. 1979), so long as those affidavits are detailed, nonconclusory and

submitted in good faith. <u>Goland v. CIA</u>, 607 F.2d 339, 352 (D.C. Cir. 1978); <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982)(*per curiam*)(highlighting affidavits must shed sufficient light on "scope and method of the search conducted by the agency").  "Even if these conditions are met the requestor may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." <u>Founding Church of Scientology</u>, 610 F.2d at 836. <u>See also</u> <u>Wilbur v. CIA</u>, 355 F.3d 675, 678 (D.C. Cir. 2004)("Likewise, the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records.").

   Therefore, the central issue here is whether the specific circumstances of the case at bar reveal "positive indications of overlooked materials", <u>Founding Church of Scientology</u>, 610 F.2d at 837, which would have been found if the CIA had conducted a "diligent search for those documents in places in which they *might be expected to be found*." <u>Miller v. U.S. Dep't of State</u>, 779 F.2d 1378, 1385 (8th Cir. 1985)(emphasis added), <u>cited with approval in</u> <u>Iturralde v. Comptroller of the Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003).

   Relying upon the Lambert Declaration, the CIA asserts that since it searched for responsive records in the records system in which the identified scope of regulations would arguably be maintained, there does not remain any substantial doubt as to the reasonableness of the CIA's search and therefore no genuine issue of material fact exists. CIA's Memo at 8. The CIA's assertion to the contrary, the Lambert Declaration does not demonstrate conclusively that the CIA conducted a diligent search. Indeed, the

barebones, boilerplate description detailed in the Lambert Declaration fails to provide any semblance of a comprehensive assessment of the adequacy of the search in light of the number of responsive regulations that actually exist.

As will be demonstrated infra, at issue here is not a "purely speculative" claim about the existence of other documents, see Ground Saucer Watch v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981), but rather a logical claim derived in accordance with applicable Executive Orders ("EO") and federal statutes. Furthermore, while it is true that the inability of an agency to find a particular document does not *generally* render a search inadequate in certain circumstances a court may place significant weight on the fact that a records search failed to turn up a particular document. See Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 892, n.7 (D.C. Cir. 1995). See also Krikorian v. Dep't of State, 984 F.2d 461, 468 (D.C. Cir. 1993)(documents not found by agency factored into court's evaluation of adequacy of search).

While JMP will concede that - after discovery has concluded - the CIA may in fact be entitled as a matter of law to summary judgment regarding the adequacy of its search, the current record – consisting of the Lambert Declaration and its Vaughn Index – is insufficient as a matter of fact to justify awarding summary judgment to the CIA at this time.

**A.    The CIA's Refusal To Provide An Unclassified, Comprehensive Index Of Responsive Regulations Deprives This Court Of Any Context With Which To Assess The Adequacy Of The Search**

As a gesture of good faith and in order to potentially resolve the need to challenge the adequacy of the CIA's search in the first place, JMP's Executive Director and counsel specifically requested that CIA's counsel provide an unclassified index of all responsive

regulations. <u>See</u> Zaid Rule 56(f) Decl. at ¶21; Exhibit "2" (January 31, 2008 e-mail from Mark Zaid, Esq. to Vesper Mei, Esq.). The list did not need to consist of anything more than each regulation's numerical identifier and subject heading.[3] Given the assuredly finite number of responsive regulations - regarding which the CIA alone has full knowledge – spanning a wide-range of potentially-applicable EOs and federal statutes, evaluating the reasonableness of the CIA's search absent such an index would arguably amount to "stumbling in the dark without a flashlight".[4] <u>Cf</u>. <u>Valencia-Lucena v. Coast Guard</u>, 180 F.3d 321, 326 (D.C. Cir. 1999)(agencies have duty to construe FOIA requests *liberally* to ensure responsive records not overlooked).

For reasons known only to the CIA, it chose not to provide an index and instead is relying here upon its affidavits. In light of the insufficiency of its affidavits, <u>see</u> Part <u>I.B</u>, the CIA's refusal to provide even a bare-bones index of all responsive regulations further undermines any attempt by the CIA to claim its' search was adequate in light of information that was available at the time the search was conducted. <u>Cf</u>. <u>Campbell</u>, 164 F.3d at 28 (reasonableness of agency's search "based on what the agency knew at its conclusion rather than what the agency speculated at its inception").

---

[3] JMP was not seeking an index that described each individual regulation in any kind of detail, thereby raising the potential applicability of various FOIA exemptions. All that was requested was a comprehensive index of all responsive regulations, even if the particular documentation constituting the individual regulation had not been identified in the CIA's search. Essentially, JMP sought to have an index, much like most federal agencies openly make available to members of the general public, so that it could assist with determining which records it believed were responsive to the scope of its submitted FOIA requests.

[4] The identification of the existence of regulations, in and of themselves, without detailing the specifics of the regulation, does nothing to implicate the concerns raised by Exemptions One, Two or Three.

**B.   The CIA's Lambert Declaration and <u>Vaughn</u> Index Are Insufficient For Purposes of Summary Judgment In Light Of Applicable Executive Orders And Federal Statutes**

Agency affidavits must "explain in reasonable detail the scope and method of the search conducted by the agency [sufficient] to demonstrate compliance with the obligations imposed by the FOIA." <u>Morley v. CIA</u>, 508 F.3d 1108, 1121 (D.C. Cir. 2007), <u>quoting</u> <u>Perry</u>, 684 F.2d at 127. An affidavit that lacks the detail "necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment" will be deemed insufficient. <u>See</u> <u>Morley</u>, 508 F.3d at 1122 (rejecting as insufficient CIA affidavit that failed to identify search terms, explain how search was conducted in each component, or give indication of what each component's search specifically yielded).

The Lambert Declaration's description of the search conducted for responsive records consists largely of boilerplate language mostly devoid of any specific context. It generically describes the procedures by which a FOIA request is processed while neglecting to specifically describe any search parameters utilized for this particular request, the extent to which the CIA revised its initial search in light of information discovered during initial phases of the search, or what – if anything – was revealed by searches in individual components of the CIA. Lambert Decl. at ¶¶24-30. In fact, it is quite simply the antithesis of the type of "detailed" and "nonconclusory" affidavit that is required as it abjectly fails to shed any light on the scope, methodology, and diligence involved in the CIA's search. Not unexpectedly, the CIA is seemingly content to devote far greater effort and detail to the generic threat posed by foreign intelligence services

(and some would question how releasing information concerning how Agency employees are entitled to spousal benefits is of grave concern to our enemies) and the need to be cognizant of the "mosaic theory" of intelligence, id, at ¶¶21-23, than to demonstrate to this Court that it conducted an adequate and reasonable search.

The Vaughn Index, for its part, fails to remedy the deficiencies of the Lambert Declaration. See CIA's Memo, Exhibit "A" ("Ex. A"). As explained below, the barebones identifications and descriptions fail to provide any context with which this Court can evaluate the adequacy of the CIA's search. In contrast, JMP has provided for this Court a sample of authorities that are encompassed by the scope of JMP's FOIA request that require the implementation of internal agency regulations.[5] Those regulations are clearly absent from the CIA's list of responsive regulations identified.[6]

Although all responsive CIA regulations were assigned MORI identification numbers, JMP has removed this identifier for regulations that are not being challenged as part of this litigation. Nevertheless, for purposes of context the designated regulation is still listed below in its respective category. All regulations identified in the Vaughn Index have been appropriately marked with their MORI identification number.

---

[5] The statutes, regulations and Executive Orders listed are not meant to constitute a comprehensive list, but rather only a mere sampling of the host of authorities that require the CIA to establish implementing regulations.

[6] Like any federal agency, and as evidenced by the sources of authority identified in the regulations disclosed by the CIA to JMP, the overwhelming majority of the CIA's regulations exist due to the existence of EOs and federal statutes that require federal agencies to establish internal regulations implementing their particular directives or policies.

*1. Personnel*

The CIA identified sixty (60) responsive regulations that were encompassed within the category of "personnel issues". Of those, twenty-four (24) of the regulations are not at issue in this litigation. With respect to the remaining thirty-six (36) regulations, twenty-one (21) regulations have been redacted in part ("RIP regulations") and fifteen (15) regulations have been denied in full ("DIF regulations").[7] The regulations were identified follows:

1) MORI 1511297 – Agency Regulation ("AR") 9-1, "Equal Employment Opportunity Program"
2) AR 10-19, "Procedures For Reporting Unforeseen Absences, Emergencies and Deaths"
3) AR 20-1, "Human Resources Administration"
4) MORI 1511253 –  AR 20-2, "Categories of Personnel"
5) AR 20-3, "The Career Services"
6) AR 20-4, "Garnishment Orders"
7) MORI 1511256 – Human Resource ("HR") 20-8, "Marriage of Employees"
8) AR 20-9, "Restrictions on Employment of Relatives"
9) AR 20-10, "Position Management and Personnel Controls"
10) MORI 1511259 – AR 20-11, "Position Classification"
11) AR 20-12, "Recruitment and Appointment"
12) MORI 1511261 – HR 20-13, "Special Considerations in Hiring or Using the Services of Certain Individuals"
13) MORI 1511262 – AR 20-14, "Military Reserve Program"
14) AR 20-16, "Evaluation Board and Panel Process"
15) MORI 1511264 – AR 20-17, "Assignments"
16) AR 20-18, "Employee Tours of Duty Abroad"
17) MORI 1511266 – AR 20-20, "The Performance Appraisal System"
18) AR 20-21, "Promotions"
19) MORI 1511268 – AR 20-22, Senior Intelligence Service"
20) AR 20-23, "Secretarial Career System"
21) MORI 1511270 – AR 20-24, "Three-Year Trial Period"
22) MORI 1511271 – AR 20-25, "Flexiplace"
23) MORI 1511272 – AR 20-28, "Voluntary Separations"
24) AR 20-29, "Hours of Work and Premium Pay"
25) MORI 1511274 – AR 20-30, "Leave and Other Absences"
26) MORI 1511275 – AR 20-31, "Pay"

---

[7] DIF regulations lack an agency regulation number, as that information was withheld by the CIA.

27) AR 20-32, "Separation and Compensation"
28) AR 20-33, "Waiver of Claims for Erroneous Payments"
29) AR 20-34, "Pay & Allowances for Missing Persons"
30) AR 20-35, "Advance of Pay Incident to PCS Assignment"
31) AR 20-36, "Medical Leave Bank and Voluntary Leave Transfer Programs"
32) MORI 1511281 – AR 20-38, "Exceptional Performance Awards and Suggestion Awards"
33) AR 20-40, "The Official Seal of the Central Intelligence Agency, the Agency Flag, the Agency Plaques, and the Agency Name and Initials"
34) MORI 1511283 – AR 20-41, "Federal Employees Workers' Compensation Act"
35) AR 20-42, "Compensation for Imprisoned Foreign Nationals"
36) AR 20-44, "Civil Services Retirement System and Federal Employees Retirement System"
37) MORI 1511286 – AR 20-45, "Social Security and Unemployment Compensation Benefits"
38) MORI 1511287 – AR 20-47, "Special Death Benefits"
39) MORI 1511288 – AR 20-49, "Casualty Planning for Certain Activities"
40) AR 20-50, "CIA Retirement and Disability System"
41) AR 20-59, "Tuition Assistance Program"
42) AR 20-70, "Detailed Personnel"
43) AR 20-71, "Consultants"
44) MORI 1511293 – AR 20-72, "Contract Employees"
45) MORI 1511294 – AR 20-73, "Contractual Relations with Assets"
46) MORI 1511367 – "Employment of Members in the Uniformed Services"
47) MORI 1511368 – "Trainee Program"
48) MORI 1511369 – "Insurance"
49) MORI 1511370 – "Career Program"
50) MORI 1511371 – "Employee Spouse Program"
51) MORI 1511372 – "Financial Regulation"
52) MORI 1511373 – "Personnel Assignments"
53) MORI 1511374 – "Financial Regulation"
54) MORI 1511375 – "Training"
55) MORI 1511376 – "Language Program"
56) MORI 1511377 – "Personnel Assignments"
57) MORI 1511378 – "Personnel Records"
58) MORI 1511379 – "Employee Insurance"
59) MORI 1511380 – "Dependent Children"
60) MORI 1511383 – "CIA Files"

Even the most cursory of glances at this list highlights the deficiencies in the

agency's search - as evidenced by the numerical gaps in the identified regulations - and

strengthens JMP's request for a simple index of all responsive regulations. The

regulations that were disclosed to JMP – in whole or in part – identify multiple sources of

authority that required and/or authorized their implementation, and the broad scope of these sources of authority strengthens the argument that other regulations were required to be created in order to implement the directives of those sources of authority. See e.g., 50 U.S.C. § 401 et seq.; 50 U.S.C. § 403 et seq.; 50 U.S.C. § 2001 et seq.; Executive Order 12953, § 301 (February 27, 1995), "Actions Required of all Executive Agencies to Facilitate Payment of Child Support"; Executive Order 12731, § 301(a)(October 17, 1990), "Principles of Ethical Conduct for Government Officers and Employees"; Executive Order 12333, § 3.2 (December 4, 1981), "United States Intelligence Activities" ("EO 12333"); 5 C.F.R. § 534 et seq.; 59 Fed. Reg. 36017.

2.  *Security Clearances*

The CIA identified four regulations pertaining to the granting and revocation of security clearances: (1) MORI 1511250 - AR 10-1, "Security Clearances, Accesses, and Approvals"; (2) AR 10-16, "Appeal of Personnel Security Decisions"; (3) MORI 1511300 - AR 13-4, "Special Activities Staff, Security Center"; and (4) AR 13-5, "Personnel Evaluation Board". Admittedly, these four regulations encompass various portions of the security clearance process. The CIA has also identified at least one other regulation that may potentially fall within this regulation, MORI 1511387 - "Security Regulation of CIA Employees".

However, these regulations do not encompass a host of procedures required by the cited-to sources of authority, including but obviously not limited to: (a) training policies and procedures for adjudication of security clearances; (b) oversight procedures for preventing the occurrence of discrimination in the security clearance process; and

(c) procedures for ensuring reciprocal acceptance of security clearances. <u>See generally</u>, Executive Order 12968 (August 4, 1995), "Access to Classified Information"; Executive Order 12958 (April 17, 1995), "Classified National Security Information"; Executive Order 12333.

*3. Grievance Procedures*

The CIA identified one regulation pertaining to grievance procedures, MORI 1511296 - AR 7-6, "Grievance Resolution". The CIA also identified at least two other regulation that may potentially fall within this category: MORI 1511385 - "Dispute Resolution"; and MORI 1511386 - "Employee Complaint System".

*4. Disciplinary Procedures*

The CIA identified one regulation pertaining to disciplinary procedures, AR 13-8, "Termination of Employment". The CIA has also identified at least two other regulations that may fall within this category: MORI 1511388 - "Employee Conduct"; and MORI 1511389 - "Reporting Official Misconduct".

*5. Prepublication Review Board*

The CIA did not identify any regulations detailing the composition, procedures and scope of the Prepublication Review Board ("PRB"). Undersigned counsel is in possession of – and has attached for this Court's consideration – at least two versions of PRB regulations that have been disclosed through prior, unrelated litigation. <u>See</u> Exhibit "3" (1995 Regulations). <u>See also</u> Exhibit "4" (2005 Regulations).

*6. Declassification of Information*

The CIA identified one regulation pertaining to the declassification of information, MORI 1511295 - AR 70-5, "Declassification and Release". The CIA also identified at

least two other regulations that may potentially fall within this category: MORI 1511381 - "Information Management Regulation"; and MORI 1511384 - "Information Management Regulation".

Given that ironically AR 70-5, which pertains to the disclosure of information, has been so heavily redacted and MORI 1511381 and MORI 1511384 have been withheld in full, it is unclear if any or all of those regulations detail the criteria and procedures for identifying, segregating and declassifying information. See Executive Order 13,292, § 5.1 (March 25, 2003), "Classified National Security Information".

    *7.  Historical Advisory Board*

The CIA did not identify any regulations detailing the composition, procedures and authority of the Historical Advisory Board. Admittedly, the actual formal title is the Historical Review Program ("HRP"). As detailed on the CIA's own website, the HRP was initially created in the 1980s by Director of Central Intelligence ("DCI") William Casey. A more formal HRP was established in 1992 by DCI Robert Gates. While the HRP is technically a "voluntarily declassification program that focuses on records of historical value", the CIA's website also notes that the HRP encompasses several statutorily-mandated obligations. See *http://www.foia.cia.gov/special_collections.asp* (last accessed June 19, 2008).

    *8.  Freedom of Information Act and Privacy Act*

The CIA did not identify any regulations detailing the implementation of either statute. Both require that each individual agency implement rules and procedures for complying with the requirements set down by both statutes. See 5 U.S.C. § 552 et seq.; 5 U.S.C. 552a et seq.

On their face, the Lambert Declaration and the <u>Vaughn</u> Index are insufficient to satisfy the CIA's burden on summary judgment, as they singularly fail to demonstrate that the CIA conducted a diligent search that was both reasonable and adequate. The existence of applicable EOs and federal statutes that require agencies to implement regulations not identified in the CIA's affidavits, as well as the absence in either document of even the most boilerplate index of regulations, significantly undercuts the CIA's argument that there remains no genuine issue of material fact concerning the adequacy of the search. The CIA's affidavits provide little to no specific context concerning the manner in which the search was conducted, failing to detail search terms used, leads investigated, or offices searched. Zaid Rule 56(f) Decl. at ¶21.

The insufficiency of the CIA's affidavits deprives this Court of an adequate context in which to assess the reasonableness of the CIA's search and therefore justifies the denial of the CIA's motion for summary judgment pending the completion of discovery.

## II. THE CIA'S AFFIDAVITS ARE INSUFFICIENT FOR PURPOSES OF SUMMARY JUDGMENT TO SUPPORT THE INVOCATION OF EXEMPTION ONE, TWO OR THREE

"The significance of agency affidavits in a FOIA case cannot be underestimated." <u>King v. Dep't of Justice</u>, 830 F.2d 210, 218 (D.C. Cir. 1987). The rationale behind this well-established axiom is clear and apparent given that in FOIA cases "the agency alone possesses knowledge of the precise content of documents withheld", thereby forcing both the FOIA requester and the court to "rely upon the agency's representations for an understanding of the material sought to be protected." <u>Id</u>. In order to withhold information an agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those

claims with the particular part of a withheld document to which they apply." Id. at 219.

See also Church of Scientology, Inc. v. Turner, 662 F.2d 784, 787 (D.C. Cir. 1980)("We have consistently maintained that vague, conclusory affidavits, or those that merely paraphrase the words of a statute, do not allow a reviewing judge to safeguard the public's right of access to government records."). Most importantly, specificity is the defining requirement of the agency's affidavits. See Gardels, 689 F.2d at 1105.

The burden of demonstrating that the material in question was properly withheld commonly requires the preparation of a detailed Vaughn Index, which must "show specifically and clearly that the requested materials fall into the category of documents" that Congress has exempted. Hayden v. NSA, 608 F.2d 1381, 1390 (D.C. Cir. 1979). See also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993)("[A]n affidavit that contains merely a 'categorical description of redacted material coupled with a categorical indication of anticipated consequences of disclosure is clearly inadequate.'"); King, 830 F.2d at 225 ("The measure of a Vaughn Index is its descriptive accuracy, and we are willing to accept innovations in its form so long, but only so long, as they contribute to that end.").[8] Of course, the determination in the agency affidavits that the materials are exempt and that no further segregation of materials is possible must be accorded "substantial weight". See Fitzgibbon, 911 F.2d at 761-62.

---

[8] The requirement regarding segregability obligates agencies to divulge all portions of documents that are not specifically exempted by statute from disclosure. See Kimberlin v. DOJ, 139 F.3d 944, 950 (D.C. Cir. 1998), cert. denied, 525 U.S. 891 (1998); Irons v. Gottschalk, 548 F.2d 992 (D.C. Cir. 1976), cert. denied sub nom. Irons v. Parker, 434 U.S. 965 (1977).

The CIA has asserted FOIA Exemptions One, Two and Three as the basis for withholding and/or redacting the responsive records.[9] CIA's Memo at 8-26. In order to justify its withholdings, CIA submitted both the Lambert Declaration and the <u>Vaughn</u> index. Neither affidavit - on its own or in combination with the other - satisfies the burden of specificity, as neither provides sufficient information to enable this Court to "make a rational decision whether the withheld material must be produced without actually viewing the documents themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on appeal." <u>Dellums v. Powell</u>, 642 F.2d 1351, 1360 (D.C. Cir. 1980). <u>See</u> Zaid Rule 56(f) Decl. at *passim*. Therefore, the CIA's Motion must be denied and discovery permitted to assess the appropriateness of the invocation of the exemptions.

### A. Exemption One

As with any other exemption, the CIA bears the burden of justifying the invocation of Exemption One. <u>See</u> <u>Campbell</u>, 164 F.3d at 30. <u>See also</u> <u>Coldiron v. Dep't of Justice</u>, 310 F. Supp. 2d 44, 50 (D.D.C. 2004)(permitting challenges to agency affidavits as "insufficient for lack of detail/specificity"). Admittedly, agency declarations invoking national security must be afforded "substantial weight", as the courts have stated

---

[9] Exemption One exempts from disclosure national security information that has been "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 552 (a)(b)(1). Exemption Two exempts from disclosure records that relate "solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(a)(b)(2). Exemption Three exempts from disclosure information that is "specifically exempt from disclosure by statute ... in such a manner as to leave no discretion on the issue, or ... establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(a)(b)(3).

repeatedly that they will not second-guess an agency's "facially reasonable concerns" regarding the harm disclosure may cause to national security. See Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999).

It is axiomatic in the world of national security, though, that "the devil is in the details". The deference that is afforded to agencies when dealing with classified information and national security, something which the CIA emphasized, see CIA's Memo at 9, is not the initial threshold issue that relates to the sufficiency of an agency's affidavits in terms of specificity and detail. The court must first evaluate whether the agency has demonstrated a logical connection between the "documents at issue and the general standards that govern the national security exemption." Coldiron, 310 F. Supp. 2d at 53, citing Campbell, 164 F.3d at 30. An agency can not simply engage in "cut and paste", but instead must provide – to the extent that it does not frustrate national security concerns – sufficient detail to demonstrate a "facially reasonable concern". Coldiron, 310 F. Supp. 2d at 54. See also Campbell, 164 F.3d at 31 (finding that while it is true that "requiring too much detail in a declaration could defeat the point of the exemption, in most cases the agency should not have difficulty describing the context and nature of the withheld information without revealing its substance").

The CIA has failed to meet this burden. The CIA, to be sure, has gone to great length to raise the specter of "national security" and impress upon this Court that its affidavits demonstrate that requiring disclosure of exempted information would reasonably be expected to result in damage to national security. CIA's Memo at 8-20; Lambert Decl. at ¶¶20-24. However, an agency can not meet its burden simply by invoking the phrase "national security". Coldiron, 310 F. Supp. 2d at 53. See Zaid Rule 56(f) Decl. at ¶¶14-

16. Through its affidavits, an agency must describe with reasonable specificity the material withheld and demonstrate that it has specifically tailored its description of the harm likely to result from release to each particular redaction. See King, 830 F.2d at 223-24.

The Lambert Declaration fails to satisfy this requirement. Its' description of the processing of JMP's FOIA request, particularly in terms of the determination of the applicability of Exemption One, lacks any semblance of true specificity, but instead relies largely upon vague and boilerplate explanations and descriptions. Lambert Decl. at ¶¶31-55. Zaid Rule 56(f) Decl. at ¶15.

The Vaughn Index is no different. Its' description of the individual regulations, particularly the justification for withholding materials under Exemption One, consists largely of nothing more than cutting and pasting boilerplate language. Indeed, JMP has provided below a mere sample of some of the descriptions found in the Vaughn Index:

- MORI 1511369 – Subject: Insurance – "Information withheld from release pursuant to Exemption (b)(1) includes information concerning classified CIA intelligence methods currently and properly classified at the CONFIDENTIAL level. Disclosure of the information withheld pursuant to Exemption (b)(1) reasonably could be expected to result in damage to the national security of the United States."

- MORI 1511372 – Subject: Financial Regulation – "Information withheld from release pursuant to Exemption (b)(1) includes information concerning classified CIA intelligence methods and activities currently and properly classified at the CONFIDENTIAL level. Disclosure of the information withheld pursuant to Exemption (b)(1) reasonably could be expected to result in damage to the national security of the United States."

- MORI 1511376 – Subject: Language Program – "Information withheld from release pursuant to Exemption (b)(1) includes information concerning classified CIA intelligence and counterintelligence methods and activities, programs, personnel, and locations. Disclosure of the information withheld pursuant to Exemption (b)(1) reasonably could be expected to result in damage to the national security of the United States."

22

- MORI 1511379 – Subject: Employee Insurance – "Information withheld from release pursuant to Exemption (b)(1) includes information concerning classified CIA information systems, intelligence methods and activities, and personnel and locations currently and properly classified at the SECRET level. Disclosure of the information withheld pursuant to Exemption (b)(1) reasonably could be expected to result in serious damage to the national security of the United States."

Ex. "A" at 31, 34, 39, 45.

In Coldiron, Judge Kennedy addressed the ongoing problem of boilerplate, repetitive explanations provided by agencies regarding Exemption One invocations in Vaughn indices. While Judge Kennedy did admittedly find that – despite the repetitive nature of the explanations – the FBI's Vaughn index was sufficient in that case, he nonetheless went to great lengths to emphasize that "the court is not to be a wet blanket" and that its review should not be vacuous. Coldiron, 310 F. Supp. 2d at 53. Indeed, Judge Kennedy's conclusion that the FBI's explanations were sufficiently tailored to the specific redactions was evaluated, by and large, in the context of past Vaughn index descriptions that have been upheld by the D.C. Circuit. See id. at 52-54 (recognizing that the FBI indicated that disclosure of particular passages would make available the very criteria used by the FBI to decide what actions warranted an investigation and that disclosure would reveal the cooperation of foreign governments). See also Schrecker v. Dep't of Justice, 254 F.3d 162, 166 (D.C. Cir. 2001)(relating to documents identifying confidential sources, disclosure "should be expected to reveal the identity of a confidential human source or reveal the identify of a human intelligence source when the unauthorized disclosure of that source would clearly and demonstrably damage the national security interests of the United States by harming the FBI's ability to continuously recruit sources for current and future use"); Halperin v. CIA, 629 F.2d 144, 149 (D.C. Cir. 1980)(regarding the names of

CIA attorneys, disclosure would "tend to reveal details of [intelligence] activities and that representatives of hostile, foreign intelligence services working in this country who, by a variety of techniques, can undertake courses of action to ascertain what other contacts, what other locations, and then arrive at determinations whether [the CIA's attorneys are] doing any other function for the Central Intelligence Agency")(internal quotations omitted).

Such specific and detail-oriented explanations are clearly lacking in the case at bar. How does a regulation identified merely as "insurance" implicate Exemption One concerns? The only description provided – and only if the description encompassing all relevant exemptions is considered as a whole – is that the information implicates classified intelligence methods and that disclosure would provide insight into internal CIA standards that would facilitate circumvention of the procedures. Ex. "A" at 31. The same can be stated about a regulation identified simply as "financial regulation". Once again, the regulation is alleged to somehow implicate an intelligence method. Id. at 34. The question of how these regulations would implicate sensitive national security concerns, much less cause the alleged harm by way of circumvention of CIA procedures, remains a mystery known only to the CIA. See also Zaid Rule 56(f) Decl. at ¶¶17-19 (comparing CIA regulations to other federal agency regulations).

Furthermore, this Court's ability to question the CIA's decision to withhold the documents under Exemptions One does not rise or fall based on the determination of the legal sufficiency of the affidavits. Following EPA v. Mink, 410 U.S. 73 (1973), Congress amended the FOIA to clarify its intent that "courts act as an independent check on challenged classification decisions." Goldberg v. U.S. Dep't of State, 818 F.2d 71, 76

(D.C. Cir. 1987). Courts are not to relinquish "their independent responsibility." Id. at 77. Nor should courts "give an agency carte blanche to redact or otherwise withhold responsive information without a valid and thorough affidavit ...." Lawyers Committee for Human Rights et al v. INS, 721 F.Supp. 552, 561 (S.D.N.Y. 1989).

Indeed, the D.C. Circuit Court of Appeals has unquestionably upheld the judiciary's ability to question an agency's Exemption One determination. In commenting on the Congressional override of resident Ford's veto of the 1974 FOIA legislation, the Court of Appeals opined that "this vote of confidence in the competence of the judiciary affirms our own belief that judges do, in fact, have the capabilities needed to consider and weigh data pertaining to the foreign affairs and national defense of this nation." Washington Post Co. v. U.S. Department of State, 840 F.2d 26, 35 (D.C. Cir. 1988), citing Zweibon v. Mitchell, 516 F.2d 594, 642-643 (1975)(en banc), cert. denied, 425 U.S. 944 (1976). Indeed, "the District Court must do more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit." Stephenson v. IRS, 629 F.2d 1140, 1145 (5th Cir. 1980)(footnote omitted).

Given, at a minimum, the insufficiency of the CIA's affidavits, summary judgment is clearly not appropriate at this time and should be denied.

**B. Exemption Three**

Exemption Three permits withholding information that is exempted from disclosure by another statute. CIA's Memo at 16, citing 5 U.S.C. § 552(b)(3). JMP does not dispute that the National Security Act, as amended, and the CIA Act, as amended, qualify as withholding statutes under Exemption Three. See CIA's Memo at 16. See also 50 U.S.C. § 403-1(i)(1)(protects intelligence sources and methods from unauthorized disclosure);

50 U.S.C. § 403g (allows withholding og intelligence sources and methods, as well as employees' personal identifiers and "internal organizational data"). The threshold issue, as the CIA itself admits, is whether the CIA's affidavits have sufficiently demonstrated that the "material withheld falls within the exemption claimed - i.e., whether it relates to intelligence sources and methods." Id.

The CIA misconstrues, however, the breadth of discretion that the courts have afforded to agencies invoking the National Security Act and the CIA Act. The CIA asserts that neither statute "requires the CIA to identify or describe the damage to national security that reasonably could be expected to result from unauthorized disclosure." CIA's Memo at 19, citing Hayden, 608 F.2d at 1390. To be sure, the D.C. Circuit in Hayden did state that "[a] specific showing of potential harm to national security, while necessary for Exemption 1, is irrelevant to the language of [the National Security Act]".[10] Id. But the Court, however, did not go so far as to permit agencies to submit boilerplate, conclusory affidavits to justify their invocation of Exemption Three. See Hayden, 608 F.2d at 1390-91 (highlighting Founding Church of Scientology ruling where D.C. Circuit rejected NSA affidavit as conclusory due to lack of specifics). In contrast, the Circuit in Hayden upheld the sufficiency of an NSA affidavit that described the intelligence activity involved – NSA monitoring of foreign electromagnetic signals – and showed why disclosure of requested materials would reveal the nature of the activity. Id. at 1391.

---

[10] The apparent concession by the CIA that a showing of specific harm to national security is required for Exemption One invocations only strengthens the arguments JMP espoused earlier regarding the insufficiency of the CIA's affidavits in relation to the CIA's invocation of Exemption One.

The CIA's affidavits fail to meet the burden established in <u>Hayden</u> and indeed are far more similar to the affidavits that were rejected as insufficient in <u>Founding Church of Scientology</u>. The Lambert Declaration does little to shed light on any specifics that would demonstrate that the information in the regulations – whether in whole or in part – fall within the scope of either statute. <u>See</u> Lambert Decl. at ¶58 ("'[I]ntelligence methods' include the special practices and procedures of an intelligence agency. The National Security Act exempts the information withheld from regulations in this case where disclosure of that information would reveal the CIA's intelligence sources and methods."). <u>See also</u> <u>id</u>. at ¶¶60-62 (stating CIA Act exempts disclosure of "intelligence sources", "intelligence methods" and employees' names and personal identifiers – among other internal data – since disclosure would reveal "CIA sources, methods, organization and functions").

The <u>Vaughn</u> Index, for its part, fails to fill in the gaps. Once again, the CIA's descriptions consist of little more than cutting and pasting boilerplate language while failing to provide any specific context that demonstrates that the information falls within the scope of either statute. A sample of the descriptions for this Court to review in considering the sufficiency of the affidavit is as follows:

- MORI 1511380 – Subject: Dependent Children – "Information disclosing the organization, function, names, or official titles of CIA employees, and information disclosing CIA intelligence methods or activities, is also withheld pursuant to (b)(3)."

- MORI 1511383 – Subject: CIA Files – "Information disclosing CIA organizations, functions, or the official titles of CIA employees, or information disclosing CIA intelligence methods or activities, is also withheld pursuant to (b)(3)."

Ex. "A" at 47, 50.

27

How does a regulation pertaining to "dependent children" – <u>not</u> a list of dependent children – disclose names or functions of CIA employees, let alone concern intelligence methods or activities? Although the CIA notes that the information concerns "classified CIA information systems, intelligence methods, and locations of CIA personnel and activities", it fails to describe in any form why such information would be in this particular regulation, let alone in what context, or how disclosure would jeopardize intelligence methods. How does a regulation identified as generically as "CIA Files" concern intelligence methods or activities? The CIA provides no context as the purpose of this regulation – as opposed to other regulations identified as "information management" – or how it in any way concerns intelligence methods or activities.

While the threat to national security by way of the "mosaic theory" arguably deserves consideration and the CIA's affidavits are afforded substantial weight, neither factor relieves the CIA of its obligation to provide sufficiently-detailed affidavits. The CIA's affidavits fail to meet the burden of demonstrating specifically how particular information falls within the scope of either withholding statute and therefore are insufficient for purposes of summary judgment.

### C. Exemption Two

Exemption Two can be invoked to protect from disclosure matters "related solely to the internal personnel rules and practices of an agency". 5 U.S.C. § 552(b)(2). A two-step test determines the applicability of the exemption: "First, the material withheld should fall within the terms of the statutory language. . . . Second, [i]f so, the agency may defeat disclosure by proving that either disclosure may risk circumvention of agency regulation, . . . or the material relates to trivial administrative matters of no genuine public interest."

Morley, 508 F.3d at 1124 (internal quotations omitted).[11] There are two types of information that can be protected from disclosure, namely "high 2" information which – if released – would "risk circumvention of the law" or "low 2" information which pertains solely to "internal matters of a relatively trivial nature". CIA's Memo at 21, quoting Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).

What is disputed is whether the CIA has met its burden – by way of its affidavits – of demonstrating that the information exempted satisfies the two-step test. After all, the exemption "does not shield information on the sole basis that it is designed for internal agency use." Fitzgibbon v. U.S. Secret Serv., 747 F. Supp. 51, 56 (D.D.C. 1990). "[A] reasonably low threshold should be maintained for determining when withheld administrative material relates to significant public interests." Founding Church of Scientology of Wash. v. Smith, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983).

### 1. "High 2" Withholdings

The CIA relies heavily upon the argument that disclosure of regulations withheld under the high 2 exemption would "significantly risk circumvention of federal statutes or regulations" by way of rendering the regulations operationally useless. See CIA's Memo at 21-23, citing Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992). See also Lambert Decl. at ¶67 ("The disclosure of this information could both affect the behavior

---

[11] In Schwaner v. Dep't of Air Force, the D.C. Circuit sought to resolve the ongoing confusion regarding the scope of information that constitutes "internal personnel rules and practices of an agency". Id. 898 F.2d 793 (D.C. Cir. 1990). The Circuit established a "predominant internality" test, and concluded that information need not actually be "rules and practice" to qualify so long as the matter "related" to rules and practices. Id. at 795. Addressing the conflicting analyses in the FOIA House and Senate Reports, the Circuit held that Exemption Two would protect "trivial rules and practices" – such as "matters of internal management" – and "nontrivial ones" – such as operating rules and procedures for investigators – whose disclosure would circumvent agency regulation. Id.

of the foreign nationals addressed in the regulation and provide foreign intelligence services with keen insights on how to circumvent the CIA's security regulations."); <u>Id</u>. ("If disclosed, this information would allow adversaries keen insights into the CIA's operational and training methods."); <u>Id</u>. ("[D]isclosure of the information could render those procedures vulnerable and weaken their effectiveness").[12]

The CIA has failed, however, to demonstrate – at a minimum – how several regulations would be rendered "operationally useless" if disclosed, other than to repeat boilerplate language stating as much. A sample of the flawed assertions includes:

- MORI 1511374 – Subject: Financial Regulation – "Disclosure of internal standards, activities, priorities, procedures and functions therein would provide insight into internal CIA procedures that would increase the vulnerability of employees affected by the CIA procedures and enable circumvention or disruption of the effective cooperation of CIA activities and intelligence methods affected by the CIA procedures."

- MORI 1511379 – Subject: Employee Insurance – "Disclosure of internal operational procedures and functions therein would provide insight into internal CIA standards and practices that would increase the vulnerability of employees affected by the CIA procedures and disrupt the effective operation of classified CIA activities and intelligence methods affected by the CIA procedures."

- MORI 1511385 – Subject: Dispute Resolution – "Disclosure of internal investigatory, confidentiality, and dispute resolution procedures therein, and disclosure of the issues to which such procedures do not apply, would provide insight into internal CIA investigatory procedures that would facilitate circumvention of CIA procedures and would disrupt the effective operation of CIA activities that are internal and confidential in nature."

Ex. "A" at 36, 45, 52.

---

[12] Indeed, the CIA does not specifically identify a single federal statute or regulation that, if disclosed, would facilitate conduct that the statute or regulation was meant to proscribe. In effect, the CIA is relying exclusively upon the notion that disclosure would render the identified regulations operationally useless.

Not even a semblance of specific context is given to identify in what manner disclosure of these regulations would render them operationally useless.[13] These descriptions pale in comparison to those that were provided in past cases upon which the CIA itself has chosen to rely as supporting its position. See CIA's Memo at 21-23, citing Schiller, 964 F.2d at 1208 (disclosure of guidelines implementing Equal Justice Act would compromise NLRB's ability to defend itself by revealing litigation strategies). See also PHE, Inc., 983 F.2d at 251 (disclosure of one particular page - out of 16 page FBI manual – detailing sources of information available to FBI agents investigating unlawful transportation of obscene matter would provide violators with ability to impede lawful investigations); National Treasury Employees Union v. United States Custom Serv., 802 F.2d 525, 530-31 (D.C. Cir. 1986)(disclosure of evaluative criteria used by USCS personnel concerning applicants for federal employment would make correct evaluation more difficult); Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981)(disclosure of a manual detailing law enforcement investigatory techniques would undermine agency's ability to prevent violation of statutes regulating use of alcohol, tobacco and firearms).

Admittedly, JMP concedes that – after discovery – certain regulations may indeed fall within the scope of the high 2 exemption. However, at this juncture JMP is not required to demonstrate anything more other than that, in light of the factual record, there remains

---

[13] The CIA also raises again the issue of the "mosaic" approach for regulations that, on their face, may seem innocuous. CIA's Memo at 23. The CIA fails, however, to provide in any of its affidavits any sense of context in which to ascertain the extent to which disclosure of certain regulations in whole or in part – in combination with other information – would render the regulations operationally useless. The CIA also has not cited – and indeed can not cite – to any Exemption Two case in which the "mosaic theory" was referenced as justification for withholding information.

a genuine issue of material fact regarding the applicability of the exemption. See Morley, 508 F.3d at 1125. Given the insufficiency of the CIA's affidavits, JMP has met its burden, rendering meritless the argument that the CIA is entitled to summary judgment.

  2.  *"Low 2" Withholdings*

  The CIA has done no better with its justifications for the invocation of Exemption Two in relation to "low 2" information. The CIA seeks to withhold information concerning recordkeeping procedures, document routing and filing instructions, regulation numbers, and occupational codes, amongst others. CIA's Memo at 24-25. See e.g., Ex. "A" at 48, 52, 53. The CIA asserts that such administrative matters - particularly those associated with record tracking and filing – are matters in which the public has no legitimate interest. See CIA's Memo at 25-26.

  The CIA's vague and boilerplate explanations justifying its attempt to withhold information pertaining to the practice of recordkeeping and filing directly conflict with the law of this Circuit. See e.g., Morley, 508 F.3d at 1125 (rejecting as insufficient CIA's vague references to "internal organizational data" and "internal Agency regulations and practices" and remanding for more detailed explanation); Fitzgibbon, 747 F. Supp. at 56-57 (rejecting agency argument that disclosing identification markings and numbers would "compromise the integrity" of recordkeeping system and holding that "agencies have no generalized interest in keeping secret the method by which they store records"); Schwaner, 898 F.2d at 798 (finding information linked to data-collecting practices, as well as duty assignment rules and practices, not protected by Exemption Two). Furthermore, it remains the CIA's burden to establish that the information withheld is too

trivial to warrant disclosure and JMP is not required to produce any dispositive evidence that there is a public interest in the information. See Morley, 508 F.3d at 1125, citing 5 U.S.C. § 552(a)(4)(B).

The CIA's affidavits fail to provide sufficient context in which an assessment can be made of the appropriateness of the "low 2" withholdings. For example:

- MORI 1511384 – Subject: Information Management Regulation – "The regulation contains low (b)(2) information: internal information pertaining to CIA employees in which there is no genuine public interest, including internal agency recordkeeping procedures and instructions, internal information review procedures, the names of internal information management systems, internal agency organizational units, an internal regulation number, official titles, and database fields for document file management."

- MORI 1511383 – Subject: CIA Files – "The regulation contains low (b)(2) information: internal information pertaining to CIA employees in which there is no genuine public interest, including internal agency file management procedures and instructions, internal information review procedures, the names of CIA file systems, internal agency organizational units, an internal regulation number, official titles, and database fields for document file management."

Ex. "A" at 50-51.

Given the insufficiency of the CIA's affidavits, there remains a genuine issue of material fact and summary judgment in favor of the CIA is not appropriate pending discovery.

## III. CIA HAS FAILED TO DEMONSTRATE THAT ALL SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS HAVE BEEN RELEASED

A Vaughn index must expressly indicate for each document that any reasonably segregable information has been disclosed. Krikorian, 984 F.2d at 467. The Court of Appeals for the District of Columbia Circuit has repeatedly held that it is reversible error for a district court not to make a finding of segregability. See e.g. Kimberlin, 139 F.3d at 950(in remanding case for segregability determination, stating that it is reversible error

for district court to fail to make segregability finding); <u>Schiller</u>, 964 F.2d at 1210(same);
<u>see also</u> <u>Animal Legal Defense Fund v. Department of the Air Force</u>, 44 F. Supp.2d 295,
299 (D.D.C. 1999) (chastising agency for failing to discharge "its duty under § 552(b)").

Notwithstanding the different Exemptions that might be asserted, nonexempt portions
of all records must be released. <u>See</u> 5 U.S.C. § 552(b) (1998)(sentence immediately
following exemptions). Here, CIA has done little to present any credible evidence that
segregable portions of the records in question cannot be released. All it claims is that "it
determined that any non-exempt information is so inextricably intertwined with the
exempt information that there are no meaningful, reasonably segregable, non-exempt
portions." <u>See</u> Lambert Decl. at ¶¶75-76.

This is completely unacceptable and contrary to law. <u>See e.g.</u>, <u>Davin v. U.S. Dep't of</u>
<u>Justice</u>, 60 F.3d 1043, 1052 (3d Cir. 1995)(rejecting conclusory representation on
segregation when declaration failed to describe process by which segregability
determinations were made and provided no "factual recitation of why certain materials
are not reasonably segregable"); <u>Krikorian</u>, 984 F.2d at 466-67 (segregability requirement
applies to all documents and all FOIA exemptions); <u>Bay Area Lawyers Alliance for</u>
<u>Nuclear Arms Control v. Department of State</u>, 818 F.Supp. 1291, 1300 (N.D.Cal.
1992)("boilerplate" statement that "no segregation of non-exempt, meaningful
information can be made for disclosure" deemed "entirely insufficient").

Therefore, CIA's request for summary judgment is premature and must be denied.
<u>See</u> <u>Voinche v. FBI</u>, 46 F.Supp.2d 26, 33 (D.D.C. 1999)(refusing to grant summary
judgment because agency's blanket segregability statement was inadequate).[14]

---

[14]<u>See also</u> <u>Judicial Watch v. U.S. Dep't. of Health & Human Services</u>, 27 F.Supp.2d 240,
246 (D.D.C. 1998)("If a court is to make specific findings of segregability without
conducting in camera review in every FOIA case, the government simply must provide
more specific information in its <u>Vaughn</u> affidavits."). Under the circumstances, JMP has
no objection to the Court undertaking an <i>in camera</i> review of the unredacted records,
which is within the discretion of the Court. <u>Spirko v. United States Postal Serv.</u>, 147 F.3d
(Continued…)

## IV. ALTERNATIVELY, JMP IS ENTITLED TO CONDUCT LIMITED DISCOVERY TO ASCERTAIN THE ADEQUACY OF THE CIA'S SEARCH AND THE APPROPRIATENESS OF THE CIA'S WITHHOLDINGS

Discovery is a permissible and useful tool in the proper judicial administration of the FOIA with regard to agency searches that are inadequate. See Founding Church of Scientology, 610 F.2d at 836-37 ("To accept its claim of inability to retrieve the requested documents in the circumstances presented is to raise the specter of easy circumvention of the Freedom of Information Act … and if, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will inevitably become nugatory."). Since in most FOIA cases the government possesses all of the relevant evidence, it is permissible to use discovery to uncover facts to determine the adequacy of the government's search or the exempt status of requested documents. See Weisberg v. Webster, 749 F.2d 864, 868 (D.C. Cir. 1984).[15] Given the insufficiency of the CIA's affidavits and the subsequent inability by the CIA to demonstrate that it conducted an adequate and reasonable search, discovery is necessary and permitted.

Indeed, the CIA's own citations undermine its own argument against the need for discovery, as several of the cases invoked by the CIA consisted of situations in which the

---

(…Continued)

992, 996 (D.C. Cir. 1998). Furthermore, *in camera* review would clearly not impose an onerous burden on the court since there is only a limited number of records in question that likely do not encompass a significant number of pages. See Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 393 (D.C.Cir. 1987)(number of documents and length involved is factor for consideration). In fact, given the vast experience of the Court in adjudicating numerous lawsuits involving the regulations of various federal agencies it is in a unique position to be able to compare the CIA's alleged "classified" regulations with those the Court has openly interpreted in other cases.

[15] While the court was addressing the particular right of the government to utilize discovery, it affirmed that right by stating that the government, "like any other litigant", should be able to utilize the rules of discovery. Weisberg, 749 F.2d at 868.

defendant agency was unable to satisfy its burden on summary judgment prior to some manner of discovery. See e.g., Oglesby, 902 F.2d at 71 (vacating district court's grant of summary judgment to defendant agency and remanding for further findings regarding adequacy of search); Weisberg, 705 F.2d at 1348 (permitting discovery to resolve material factual dispute regarding adequacy of search); Perry, 684 F.2d at 124-25 (awarding summary judgment to defendant agency only after agency had been forced to conduct two additional searches pursuant to judicial order); Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 5-6 (D.D.C. 2000)(awarding summary judgment only after defendant agency had conducted additional search subsequent to original motion for summary judgment and released additional 658 pages of responsive records).

The permissibility of discovery in relation to exemption claims is no different. See e.g., Tax Analysts v. IRS, 214 F.3d 179, 185 (D.C. Cir. 2000)(determining that discovery necessary to develop factual record); Schaffer v. Kissinger, 505 F.2d 389, 391 (D.C. Cir. 1974)(reversing and remanding district court's grant of summary judgment with instructions that plaintiffs be permitted to undertake discovery relating to whether records in question had been "properly classified" in accordance with Executive Order as required by terms of Exemption 1). Courts are to "require the agency to create as full a public record as possible concerning the nature of the documents and the *justification* for nondisclosure." Hayden, 608 F.2d at 1384 (emphasis added). See also Gardels, 689 F.2d at 1105 ("The test is not whether the court personally agrees in full with the [agency]'s evaluation of the danger - rather, the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility...."). If the agency's affidavits are insufficient, the Court is permitted to

"conduct a detailed inquiry into whether it agrees with the agency's opinions...."
Halperin, 629 F.2d at 148. At least one court has even used the opportunity to simply
order the disclosure of the relevant records. Powell v. United States Dep't of Justice, No.
C-82-326, slip op. at 8 (N.D.Cal. Mar. 27, 1985)(district court ordered disclosure of
classified information because it was "convinced [that] disclosure of this information
poses no threat to national security.").

     Given the previously-detailed insufficiency of the CIA's affidavits in relation to the
justifications for invoking Exemptions One, Two and Three, the need for discovery on
this end is both permissible and necessary. The Vaughn Index in particular fails to
adequately "describe the injury to national security that would follow from the
disclosure" of the regulations. See Wiener v. FBI, 943 F.2d 972, 980 (9th Cir.1991). It is
not enough to rely "on general assertions that disclosure of certain categories of facts may
result in disclosure of the source and disclosure of the source may lead to a variety of
consequences detrimental to national security." Id. See also Rosenfeld v. United States
Dep't of Justice, 57 F.3d 803, 808 (9th Cir. 1995)(same).[16]

     Discovery does not need to be overly burdensome or excessive in scope. At a
minimum, supplemental CIA affidavits – possibly including the previously-requested
comprehensive index of responsive regulations – could fill at least some of the
evidentiary gaps identified by JMP. In addition, a limited number of interrogatories and
depositions will be necessary to identify the full scope of responsive regulations that exist
and assess whether the CIA's search methodology was reasonably calculated to uncover

---

[16]Moreover, the D.C. Circuit's Court of Appeals has ruled that "[a]n assurance of
*procedural* compliance does not, by itself, afford an adequate foundation for de novo
review of the *substantive* propriety of the withholdings in question." King, 830 F.2d at
226.

all responsive documents in light of that information. Zaid Rule 56(f) Decl. at ¶21.

Similarly limited discovery will also be necessary to ascertain the appropriateness of the

CIA's invocations of Exemptions One, Two, and Three. Id.

## CONCLUSION

For the foregoing reasons, the CIA's Motion for Summary Judgment should be

denied and JMP should be permitted to undertake limited discovery.

Date:   July 1, 2008

Respectfully submitted,

/s/
_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                      |     |                                       |
|--------------------------------------|-----|---------------------------------------|
|                                      | *   |                                       |
| THE JAMES MADISON PROJECT            | *   |                                       |
|                                      | *   |                                       |
| Plaintiff,                           | *   |                                       |
|                                      | *   |                                       |
| v.                                   | *   | Civil Action No. 07-01154 (RMU)       |
|                                      | *   |                                       |
| CENTRAL INTELLIGENCE AGENCY          | *   |                                       |
|                                      | *   |                                       |
| Defendant.                           | *   |                                       |
|                                      | *   |                                       |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**RULE 56(f) DECLARATION OF**
**EXECUTIVE DIRECTOR MARK S. ZAID, ESQ.**

I, MARK S. ZAID, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.  I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge and in support of the plaintiff's Opposition to Defendant's Motion for Summary Judgment (filed April 25, 2008).

2.  I am the Executive Director of the plaintiff James Madison Project ("JMP") and have served in that position since I founded the organization in 1998. JMP is a Washington, D.C.-based non-profit organization created for the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing. Much of the work undertaken by JMP involves litigation under disclosure acts such as the Freedom of Information Act ("FOIA"). The principles underlying the objectives of the JMP are derived from the 1997 findings of The Commission on Protecting and Reducing Government Secrecy. Our website, which contains further information and examples of JMP's activities, can be viewed at *www.JamesMadisonProject.org*.

3.   I am also an attorney of record in this litigation for JMP. I am admitted to practice

law in the States of New York, Connecticut, Maryland and the District of Columbia, as

well as the D.C. Circuit, Second Circuit and Fourth Circuit Court of Appeals, and the

United States District Courts for the District of Columbia, Maryland, Eastern District of

New York, Northern District of New York and the Southern District of New York. I have

been litigating FOIA cases since 1993. I have been teaching the D.C. Bar Associations

CLE courses on FOIA since 2003, and I have been the co-editor of LITIGATION

UNDER THE FEDERAL OPEN GOVERNMENT LAWS since 2002.

**Procedural Background**

4.   By letter dated May 18, 2000, I submitted to the Central Intelligence Agency

("CIA") on behalf of JMP a FOIA request which sought copies of all internal CIA

regulations on or pertaining to (1) personnel issues; (2) the granting or revocation of

security clearances; (3) grievance procedures; (4) disciplinary procedures; (5) the

Prepublication Review Board; (6) declassification of information; (7) the Historical

Advisory Board; and (8) the implementation of the Freedom of Information and Privacy

Acts. The request also required the CIA to reprocess those regulations it had previously

released through an earlier FOIA lawsuit, as published in 58 Fed.Reg. 65964

(December 17, 1993), to the extent any information within these regulations was

redacted.

5.   After more than two years elapsed with no response, by letter dated July 26, 2002,

the CIA acknowledged receipt of the request and assigned it Request No. F-2000-01097.

6.   In the same letter the CIA also denied JMP's request in its entirety on the basis of

FOIA Exemption (b)(3). Despite the fact that earlier litigation had resulted in the release

2

of internal CIA regulations, thus placing the CIA on notice that the contents were susceptible to release, the CIA continued to promote its attitude towards excessive secrecy. Additionally, the CIA refused to even reprocess those regulations that had been previously released but remained redacted claiming that it was not required to do so. No statutory or regulatory authority was provided as the basis for this position.

7.   By letter dated August 8, 2002, I informed the CIA of JMP's decision to appeal the denial of the request. The CIA acknowledged receipt of the appeal by letter dated August 20, 2002.

8.   No further responses were ever received by the CIA. Therefore, after nearly five years of patiently waiting for the CIA to fulfill its legal obligations, and coming up on the eve of the expiration of the six year statute of limitation period, on June 27, 2007, JMP filed suit in this Court.

9.   On September 21, 2007, I spoke with Vesper Mei, the Department of Justice attorney representing the CIA, and we negotiated the following: (1) the parties agree to treat plaintiff's FOIA request as a request for copies of the versions of the CIA regulations that it seeks that were current as of June 27, 2007, and for no other documents; (2) the CIA will complete processing of the documents responsive to plaintiff's request and release to plaintiff any non-exempt documents or portions of documents by January 11, 2008; (3) the parties will confer with respect to the CIA's release (if any) of documents by January 25, 2008; and (4) if, after conferring, the parties do not agree that the CIA's release of any non-exempt documents or portions of documents resolves the issues in this case, the CIA will move for summary judgment on or before March 25, 2008.

10. By letter dated January 10, 2008, the CIA released 53 documents that had been previously withheld in their entirety in segregable form. An additional unknown number of records continued to be withheld in their entirety.

11. From the CIA's filing of its Motion for Summary Judgment, the CIA claims it identified 76 responsive documents, of which 53 were partially released and 23 withheld in full. Upon review of released records I determined that JMP would challenge the withholdings in 25 of the 53 documents partially released, and all of the 23 records withheld in full.

12. The CIA subsequently released, as part of its Motion for Summary Judgment, a redacted version one of the documents initially withheld in full.

**Substantive Response**

13. The CIA relies on the Declaration of Joseph W. Lambert, Director, Information Management Services, Office of the Chief Information Officer (dated April 24, 2008)("Lambert Decl.") to support its withholding determinations.

14. In my private capacity as an attorney I have been representing federal employees in internal matters for over 15 years. This includes employees within the Intelligence Community as a whole and the CIA specifically. The CIA is required, just like any other federal agency, to adopt and implement a host of federal statutes. Many of its regulations, as evidenced by those records released as part of this very lawsuit, reveal that not only are they oftentimes mere regurgitations of sections of federal statutes (such as, for example, FOIA), but are also quite similar to those in existence at other federal agencies.

15. As both a private attorney and as the Executive Director of JMP, I have litigated dozens of FOIA lawsuits. In fact, many of these cases have been against the CIA. Mr.

4

Lambert's declaration is likely one of the most hyped and exaggerated documents I have

seen in litigating FOIA cases during the last 15 years. And as many of agency FOIA

declarations tend to be, Mr. Lambert's document is no exception in that it contains pages

upon pages of generalized boiler-plate descriptions of the process by which the CIA

coordinates FOIA requests, how generic classification determinations are rendered and

the differing levels, descriptions of FOIA exemptions and, of course, the typical bells and

whistles concerning the alleged dangers posed by the "mosaic theory".[1]

   16. Mr. Lambert's declaration contains bold propositions that a "wholesale request for

the public release of internal CIA regulations--particularly where such a request could be

repeated over time to develop an evolving picture of CIA organizational behavior

priorities, systems, procedures, and methods--presents unique risks to the CIA's

operational effectiveness which *Congress anticipated and against which it explicitly*

*protected the CIA by statute*." Id. at ¶9 (emphasis added). Mr. Lambert provides

absolutely no evidence to support the notion that the withholding of regulations, such as

special death benefits and medical leave, was what Congress in 1947 anticipated should

be withheld in order to protect the "secrecy" of the CIA. The burden to demonstrate that

---

[1] Why, for example, does Mr. Lambert comment upon the "risk that there may be a spy within its ranks" so that appropriate precautions are required to be taken, and that "[o]ne way to minimize such damage is to limit the amount of information to which any particular employee has access." Lambert Decl. at ¶24. For one thing, this lawsuit addresses the extent to which the CIA is statutorily required to release records to the public. It has nothing to do with employee access to information. Moreover, should the CIA actually have a spy currently in its midst, that "employee" would likely have legitimate access to the majority, if not all, of the regulations at issue in this lawsuit – given that they primarily pertain to personnel matters – simply by virtue of their employment status.

Congressional intent supports its premise, which JMP challenges, falls upon the CIA and it has not met that burden.

17. As stated above, many federal agencies post their internal regulations online including some that possess intelligence functions. For example, the following agencies' regulations can easily be compared to the contents of the CIA regulations at issue here to determine exactly what is and is not "classified" and how release could grant our enemies tactical advantage:

- Department of Defense
  *http://www.access.gpo.gov/nara/cfr/waisidx_04/32cfrv1_04.html*

- Department of Homeland Security (Aliens and Nationality)
  *http://www.access.gpo.gov/nara/cfr/waisidx_08/8cfrv1_08.html*

- Department of Homeland Security (Domestic Security)
  *http://www.access.gpo.gov/nara/cfr/waisidx_08/6cfrv1_08.html*

- Department of State
  *http://www.access.gpo.gov/nara/cfr/waisidx_08/22cfrv1_08.html*

- Department of Justice
  *http://www.access.gpo.gov/nara/cfr/waisidx_07/28cfrv1_07.html* and
  *http://www.access.gpo.gov/nara/cfr/waisidx_07/28cfrv2_07.html#43*

- Bureau of Alcohol, Tobacco, Firearms & Explosives
  *http://www.access.gpo.gov/nara/cfr/waisidx_08/27cfrv3_08.html*

- Federal Emergency Management Administration
  *http://www.access.gpo.gov/nara/cfr/waisidx_07/44cfrv1_07.html*

18. Even the Defense Intelligence Agency, a sister intelligence agency to that of the CIA, has declassified many of its internal regulations. Several, including pertaining to personnel security, are listed on JMP's website at *http://www.jamesmadisonproject.org/ documents.php?organization_id=3&category_id=6.*

6

19. More specifically, while the CIA may arguably have some legitimate claims to "secrecy", those claims are no more so relevant than in relation to the Department of Justice, the Department of Defense, or the Department of the Navy, among others. All three such agencies have publicly released internal regulations encompassing matters whose scope arguably falls within some of the very regulations that the CIA has chosen to withhold in their entirety. For example:

- <u>Exemption One</u>
  MORI 1511372 – Subject: Financial Regulation
  28 C.F.R. 47 (Right to Financial Privacy Act) – Department of Justice regulation authorizing ability to request financial records from a financial institution if relevant to a law enforcement inquiry.

- <u>Exemption Three</u>
  MORI 1511380 – Subject: Dependent Children
  32 C.F.R. 54 (Allotments for Child and Spousal Support) – Department of Defense regulation providing policy on statutorily required child and/or spousal support allotments.
  32 C.F.R. 734 (Garnishment of Pay and Naval Military and Civilian Personnel for Collection of Child Support and Alimony) – Department of the Navy regulation detailing procedures pertaining to enforcement of legal obligations to provide child support.

- <u>Exemption Two (high)</u>
  MORI 1511385 – Subject: Dispute Resolution
  32 C.F.R. 70 (Discharge Review Board Procedures and Standards) – Department of Defense regulation establishing policies and procedures for review of discharges or dismissals.

- <u>Exemption Two (low)</u>
  MORI 1511384 – Subject: Information Management Regulation
  28 C.F.R. 25 (Information Systems) – Department of Justice regulation establishing policies and procedures implementing the Brady Handgun Violence Prevention Act.

20. Mr. Lambert claims that "every CIA regulation is a piece of a mosaic of information reflecting the CIA's overall organization and function." Lambert Decl. at ¶63. He further notes that "[a]s a result, CIA regulations provide a framework for any

'mosaic' that a hostile entity might assemble to use against the United States." Id. at ¶64.
Not surprisingly, no effort is made to attach the application of the "mosaic theory" to
specific documents, likely because it simply could not be done. For example, MORI
DocId: 1511295 which is AR 70-5: Declassification and Release is, ironically, one of the
most redacted of the partially released records. Almost half of the document is redacted.
Exactly how does the "mosaic theory" apply, thereby according some potential benefit to
a foreign intelligence service, to a regulation that merely implements how records are to
be "officially declassified" and publicly released? In order to attain dismissal of this
lawsuit on the basis of summary judgment, the burden is upon the CIA to articulate the
application of any relevant FOIA exemptions and potential dangers that would ascribe
were records to be released. It has failed to do so in this case.

   21. With respect to the issue of adequacy of search, the CIA has failed to demonstrate
it has acted reasonably and processed all responsive records. First, there is no way to
determine exactly whether the CIA's search was adequate when it does not cooperate to
provide an unclassified list of its' regulations to review. This information is only in the
possession of the CIA. By e-mail dated January 31, 2008, I requested the CIA, through
the Department of Justice attorney handling this case, Vesper Mei, each regulation's
numerical identifier and subject heading in an attempt to eliminate the need to challenge
the CIA's adequacy of its search. See Exhibit "2". The CIA declined to provide the
information. Second, the Lambert Declaration and the CIA's Vaughn Index singularly fail
to demonstrate that the CIA conducted a diligent search that was both reasonable and
adequate. The existence of applicable Executive Orders and federal statutes that require
agencies to implement regulations not identified in the CIA's affidavits, as well as the

absence in either document of even the most boilerplate index of regulations, significantly undercuts the CIA's argument that there remains no genuine issue of material fact concerning the adequacy of the search. The CIA's affidavits provide little to no specific context concerning the manner in which the search was conducted, failing to detail search terms used, leads investigated, or offices searched. The insufficiency of the CIA's affidavits deprives JMP as a requestor, and this Court, of an adequate context in which to assess the reasonableness of the CIA's search.

22. Because material facts, such as described above, still remain at issue, JMP should be permitted to undertake limited discovery in order to address the disputes surrounding the CIA's adequacy of search and the appropriateness of its Exemption invocations. Discovery need not be overly burdensome or excessive in scope. At a minimum, supplemental CIA affidavits – possibly including the previously-requested comprehensive index of responsive regulations – could fill at least some of the evidentiary gaps identified by JMP. In addition, a limited number of interrogatories and depositions will be necessary to identify the full scope of responsive regulations that exist and assess whether the CIA's search methodology was reasonably calculated to uncover all responsive documents in light of that information

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date:   July 1, 2008


/s/
_____
Mark S. Zaid

## Mark S. Zaid

| | |
|---|---|
| **From:** | Mark S. Zaid [mark@markzaid.com] |
| **Sent:** | Thursday, January 31, 2008 12:07 PM |
| **To:** | 'Mei, Vesper (CIV)' |
| **Cc:** | 'Bradley P. Moss, Esq.'; mark@markzaid.com |
| **Subject:** | RE: JMP v. CIA, C.A. 07-1154 (CIA regs) |

Vesper –

I have reviewed the 53 documents that were released as part of this litigation.

First, as I noted last week, the CIA's letter just notes in passing that records were withheld in their entirety. That does not permit me any ability to determine whether to forgo any judicial challenge to those withholdings. Any information you can provide, such as the number of regulations and pages withheld (or even better an unclassified list of the regulations by name which would allow me the opportunity to identify those regs I believe are responsive to the FOIA request and eliminate any adequacy of search issues), would be helpful. Otherwise, we'll just simply have to challenge those withholdings and require the Agency to submit a Vaughn Index to justify its decision.

Second, with respect to any record that we are challenging, we are not challenging the withholding of individual's names (if any) or telephone/facsimile numbers. We may be willing to also forgo additional (b)(2) exemptions if you can generally – informally - describe the type of information that is at issue.

Third, we are challenging the withholdings in the following documents: MORI DocID: 1511250, 1511253, 1511256, 1511259, 1511261, 1511262, 1511264, 1511266, 1511268, 1511270, 1511271, 1511272, 1511274, 1511275, 1511281, 1511283, 1511286, 1511287, 1511288, 1511293, 1511294, 1511295, 1511296, 1511297, 1511300

Fourth, we are NOT challenging the withholdings in the following documents: MORI DocID: 1511251, 1511252, 1511254, 1511255, 1511257, 1511258, 1511260, 1511263, 1511265, 1511267, 1511269, 1511273, 1511276, 1511277, 1511278, 1511279, 1511280, 1511282, 1511284, 1511285, 1511289, 1511290, 1511291, 1511292, 1511298, 1511299, 1511301, 1511302

If you have any questions, please do not hesitate to contact me.

Mark

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is addressed. It contains confidential information that may also be legally privileged. Any copying, dissemination or distribution of the contents of this e-mail by anyone other than the addressee or his or her agent for such purposes is strictly prohibited. If you have received this e-mail in error, please notify me immediately by telephone, facsimile or e-mail and purge the original and all copies thereof. Thank you

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                        |     |                                      |
| -------------------------------------- | --- | ------------------------------------ |
|                                        | *   |                                      |
| THE JAMES MADISON PROJECT               | *   |                                      |
|                                        | *   |                                      |
| Plaintiff,                             | *   |                                      |
|                                        | *   |                                      |
| v.                                     | *   | Civil Action No. 07-01154 (RMU)      |
|                                        | *   |                                      |
| CENTRAL INTELLIGENCE AGENCY            | *   |                                      |
|                                        | *   |                                      |
| Defendant.                             | *   |                                      |
|                                        | *   |                                      |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**RESPONSE TO DEFENDANT'S LOCAL RULE 7(h) STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7.1 (h), the plaintiff respectfully responds to the defendant's

Statement of Material Facts as to Which There is No Genuine Issue.

1.   Plaintiff does not dispute these statements.

2.   Plaintiff does not dispute the factual contents of the Central Intelligence Agency's

letter dated July 26, 2002.

3.   Plaintiff does not dispute this statement.

4.   Plaintiff does not dispute these statements.

5.   Plaintiff does not dispute this statement.

6.   Plaintiff does not dispute the factual recitations of these statements in that the

specific searches indicated were undertaken and that certain documents were retrieved,

but does dispute any implied legal characterizations or conclusions that these searches

were adequate or reasonable to locate all responsive records.

7.   Plaintiff does not dispute the factual recitations of this statement in that certain

responsive documents were released in part, but does dispute any legal characterizations

or conclusions regarding the applicability of FOIA exemptions or the segregability of information.

8.   Plaintiff does not dispute the factual recitations of these statements in that certain records were withheld in full, but does dispute any legal characterizations or conclusions regarding the applicability of FOIA exemptions.

9.   Plaintiff does not dispute these statements.

10. Plaintiff disputes this statement with respect to the applicability of the stated FOIA exemptions.

Date:   July 1, 2008

Respectfully submitted,

/s/
_____
Mark S. Zaid, Esq.
DC Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE JAMES MADISON PROJECT | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *    Civil Action No. 07-01154 (RMU) |
| | * |
| CENTRAL INTELLIGENCE AGENCY | * |
| | * |
| Defendant. | * |
| | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ORDER

Upon consideration of plaintiff's Opposition to Defendant's Motion for Summary

Judgment, and it appearing that the relief prayed is just and appropriate, it is this _____

day of _____ 2008,

ORDERED, that defendant's Motion is denied; and

FURTHER ORDERED, that the plaintiff is permitted to undertake limited discovery

as set forth in the accompanying Memorandum Opinion.


_____
UNITED STATED DISTRICT JUDGE