**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| THE JAMES MADISON PROJECT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-1154 (RMU) |
| | : | | |
| v. | : | Document No.: | 11 |
| | : | | |
| CENTRAL INTELLIGENCE AGENCY, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Granting the Defendant's Motion for Summary Judgment

## I. INTRODUCTION

This matter is before the court on the defendant's motion for summary judgment.  The plaintiff is a nonprofit organization created to "educat[e] the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing."  Pl.'s Opp'n at 1 n.1.  In furtherance of this aim, the plaintiff submitted a request to the defendant under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking copies of internal CIA regulations pertaining to eight categories of information.  The defendant released documents to the plaintiff in response to its request, but withheld certain documents, claiming that they were exempted from production under FOIA.  The defendant has filed a motion for summary judgment, asserting that it has produced all of the documents FOIA requires it to produce.  The plaintiff opposes the defendant's motion.  Based on the court's determination that the defendant's search was reasonable, it produced all non-exempt documents and it properly segregated exempt from non-exempt documents, the court grants the defendant's motion for summary judgment.

## II.  FACTUAL & PROCEDURAL BACKGROUND

On May 18, 2000, the plaintiff requested CIA regulations on the following eight topics: (1) personnel issues; (2) the granting or revocation of security clearances; (3) grievance procedures; (4) disciplinary procedures; (5) the Prepublication Review Board; (6) declassification of information; (7) the Historical Advisory Board; and (8) implementation of FOIA and the Privacy Act.  Def.'s Mot., Ex. 1 (Decl. of Joseph W. Lambert, Director, Info. Mgmt. Servs., Office of the Chief Info. Officer, CIA ("Lambert Decl.")) ¶ 11.  After the defendant denied the plaintiff's request, the plaintiff filed an administrative appeal with the defendant on August 8, 2002.  Def.'s Mot. at 2.  When, in June 2007, the defendant had not yet adjudicated the appeal due to a backlog of FOIA appeals, the plaintiff filed suit in this court.  *See* Compl.  The parties agreed that the defendant would process and release any non-exempt materials responsive to the plaintiff's request on or before January 11, 2008.  Def.'s Mot. at 3.  The defendant produced to the plaintiff some documents responsive to its request, but withheld other materials pursuant to three of the exemptions enumerated in FOIA: 5 U.S.C. § 552(b)(1) ("Exemption 1"); 5 U.S.C. § 552(b)(2) ("Exemption 2"); and 5 U.S.C. § 552(b)(3) ("Exemption 3").  *Id.* at 3-4.

The defendant has moved for summary judgment, asserting that its search for responsive records was reasonable, *id.* at 7-8; its invocation of the exemptions was necessary and proper, *id.* at 11-26; and it reasonably segregated exempt from non-exempt documents responsive to the plaintiff's request, *id.* at 26.  The plaintiff opposes the defendant's motion, claiming that the search was not reasonable, Pl.'s Opp'n at 8-12; the defendant's justification for invoking the three exemptions is insufficient, *id.* at 20-33; and the defendant did not adequately segregate exempt information from non-exempt information, *id.* at 34.  Alternatively, the plaintiff requests

that the court allow it to conduct discovery to ascertain the reasonableness of the defendant's search for responsive records and the appropriateness of the defendant's withholdings.  *Id.* at 35-38.  The court turns now to the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure.  5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  FOIA confers jurisdiction on the federal district courts to order the

release of improperly withheld or redacted information.  5 U.S.C. § 552(a)(4)(B).  In a judicial

review of an agency's response to a FOIA request, the defendant agency has the burden of

justifying nondisclosure, and the court must ascertain whether the agency has sustained its

burden of demonstrating that the documents requested are exempt from disclosure under FOIA.

5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't

of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  An agency may meet this burden by providing

the requester with a *Vaughn* index, adequately describing each withheld document and

explaining the exemption's relevance.  *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820

(fashioning what is now commonly referred to as a "*Vaughn* index").

> The court may grant summary judgment to an agency on the basis of its affidavits if they:
>
> [(a)] describe the documents and the justifications for nondisclosure with reasonably
> specific detail, [(b)] demonstrate that the information withheld logically falls within
> the claimed exemption, and [(c)] are not controverted by either contrary evidence in
> the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## B.  The Court Grants the Defendant's Motion for Summary Judgment

### 1.  Legal Standard for FOIA Adequacy of Agency Search

"A requester dissatisfied with the agency's response that no records have been found may

challenge the adequacy of the agency's search by filing a lawsuit in the district court after

exhausting any administrative remedies."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

326 (D.C. Cir. 1999).  To prevail on summary judgment, "the agency must demonstrate beyond

material doubt that its search was reasonably calculated to uncover all relevant documents."

*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)

(internal quotations and citations omitted).  An agency must search for documents in good faith,

using methods that are reasonably expected to produce the requested information.

*Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).   The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable.   *Oglesby v. U.S. Dep't of Army*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).   The agency need not search every record in the system or conduct a perfect search.   *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956.   Nor need the agency produce a document if "the agency is no longer in possession of the document[] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable.   *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d at 68).   While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith.   *SafeCard Servs.*, 926 F.2d at 1200.   But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*   If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate.   *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

## 2.  The Defendant's Search Was Reasonable

The defendant asserts that it conducted a search that was reasonably calculated to uncover documents responsive to the plaintiff's FOIA request and appropriately targeted responsive documents.  Def.'s Mot. at 7-8.  The plaintiff disagrees, arguing that the record does not conclusively demonstrate that the defendant conducted a diligent search for documents responsive to the plaintiff's request.  Pl.'s Opp'n at 8-9.  The plaintiff asserts that the Lambert declaration and the *Vaughn* index are vague and conclusory, *id.* at 11, and requests that the defendant provide an unclassified, comprehensive index of documents responsive to the plaintiff's request, *id.* at 9-10.  In support of its contention that there are indications of materials that the defendant overlooked in its search for responsive documents, the plaintiff identifies several "authorities that are encompassed by . . . [the plaintiff's] FOIA request that require the implementation of internal agency regulations."  *Id.* at 12.  The defendant, the plaintiff maintains, should have produced those internal regulations in response to the plaintiff's FOIA request.  *Id.* at 12, 13-18.

In response, the defendant argues that the plaintiff has offered only speculation that additional documents responsive to its request might exist.  Def.'s Reply at 2.  The plaintiff focuses on the fact that additional internal agency regulations might exist – as evidenced by the fact that various authorities require the defendant to implement internal regulations that were not produced in response to the plaintiff's request – but in the defendant's view, the plaintiff "confuses the question of whether additional regulations exist with whether there are additional regulations that are actually *responsive* to plaintiff's FOIA request."  *Id.* at 2, 4-5.  Because mere speculation that additional responsive documents exist is an insufficient basis on which to

determine that the agency search was not reasonable, the defendant maintains that its search was reasonable. *Id.* at 3. Finally, with respect to the plaintiff's request for an unclassified index of documents responsive to its request, the defendant points out that the plaintiff has failed to specify how such an index would facilitate an evaluation of the reasonableness of the defendant's search. *Id.*

The court must look to the Lambert declaration and the *Vaughn* index to determine whether the defendant's search for documents responsive to the plaintiff's request was reasonable. *See Nation Magazine*, 71 F.3d at 890 (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d at 68). The Lambert declaration explains that the defendant maintains its internal regulations in a searchable records system, and that the defendant searched in that system for records responsive to the plaintiff's request. Lambert Decl. ¶ 15. Pursuant to the parties' agreement, the defendant searched only for responsive internal regulations in effect as of June 27, 2007, and located seventy-six internal regulations responsive to the request. *Id.*

Because the Lambert declaration explains that all of the defendant's internal regulations are maintained in one searchable records system and that the defendant searched that system for documents responsive to the plaintiff's request, Lambert Decl. ¶ 15, the court concludes that the defendant's search method could reasonably be expected to produce the information requested, *see Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (noting that "FOIA demands only a reasonable search tailored to the nature of a particular request"). Further, the court is not persuaded by the plaintiff's contention that the fact that various statutes require the promulgation of internal CIA regulations not produced in response to the plaintiff's request "reveals a positive indication of overlooked materials." Pl.'s Opp'n at 8. As the defendant

correctly observes, the relevant question is not whether the defendant failed to produce additional internal regulations, but rather whether the defendant failed to produce additional internal regulations *responsive to the plaintiff's request*.  *See Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (holding that the defendant "must prove that each document *that falls within the class requested* either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements") (emphasis added). Because the plaintiff has pointed to nothing that would create a substantial doubt as to whether the defendant overlooked additional *responsive* regulations, the court holds that the defendant has demonstrated beyond material doubt that its search was reasonable.  *See Campbell*, 164 F.3d at 28.

### 3.  The Agency Properly Invoked Exemptions 1, 2 and 3

#### a.  Legal Standard for Exemption 1 Withholding

Exemption 1 of FOIA exempts from mandatory disclosure matters that are (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy" and (2) "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Information "must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms" in order to be properly withheld under Exemption 1.  *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980).  An agency that withholds information pursuant to this exemption bears the burden of justifying its decision.  *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987) (citing 5 U.S.C. § 552(a)(4)(B)).  Under Executive Order 12,958, an agency may not authorize information to be kept secret unless, *inter alia*, the "disclosure of the information

reasonably could be expected to result in damage to the national security."  Exec. Order No.
12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995).

Courts review challenges to an agency's decision to withhold information *de novo*.  *King*,
830 F.2d at 217; 5 U.S.C. § 552(a)(4)(B).  The court should conduct an *in camera* review if the
agency's affidavits are insufficient to make the *de novo* determination.  *Hayden v. Nat'l Sec.
Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384-88 (D.C. Cir. 1979).  In reviewing an agency's
invocation of an exemption, the court must consider that in enacting FOIA, Congress aimed to
strike a balance "between the right of the public to know what their government is up to and the
often compelling interest that the government maintains in keeping certain information private,
whether to protect particular individuals or the national interest as a whole."  *ACLU v. U.S. Dep't
of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (citing *John Doe Agency v. John Doe Corp.*,
493 U.S. 146, 152-53 (1989)).

The court is to "accord substantial weight to an agency's affidavit concerning the details
of the classified status of the disputed record."  *Military Audit Project*, 656 F.2d at 738 (deferring
to the agency's assertions in holding that the information could cause serious damage to the
national security); *see also Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982).  This
is especially true "in a national security case, in which the agency possesses necessary expertise
to assess the risk of disclosure," *Schlesinger v. CIA*, 591 F. Supp. 60, 67 (D.D.C. 1984), and
judges "lack the expertise necessary to second-guess . . . agency opinions," *Halperin v. CIA*, 629
F.2d 144, 148 (D.C. Cir. 1980) (deferring to the agency's opinion and holding that certain CIA
affidavits provided ample evidence to show potential harm under a limited *de novo* review).  If
the court finds that the agency's affidavits are insufficiently detailed, it should deny summary

9

judgment in Exemption 1 cases on procedural grounds. *Campbell*, 164 F.3d at 31 (remanding to the district court to allow the FBI to further "justify" its Exemption 1 claim because its declaration failed to "draw any connection between the documents at issue and the general standards that govern the national security exemption"), *remanded to* 193 F. Supp. 2d 29, 38 (D.D.C. 2001) (holding that a declaration was insufficient by merely concluding, without further elaboration, that "disclosure of [the] information could reasonably be expected to cause serious damage to national security"); *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1180 (D.C. Cir.1996) (rejecting certain *Vaughn* indices as insufficient because agencies must itemize each document and adequately explain "the connection between the information withheld and the exemption claimed"); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d at 66 n.12 (noting the detail required in public *Vaughn* affidavits, especially in regard to an agency's obligation to segregate and release nonexempt material).

### b.  The Defendant Properly Invoked Exemption 1

Relying on Executive Order 12,958, the defendant contends that disclosure of the information withheld pursuant to Exemption 1 "reasonably could be expected to result in damage to the national security" because it would reveal the defendant's intelligence activities, sources and methods.  Def.'s Mot. at 12.  The defendant also avers that it followed the procedures delineated in Executive Order 12,958 before withholding the information.  *Id.* at 11-12.  The plaintiff, however, contests the validity of the defendant's withholdings, asserting that the Lambert declaration and the *Vaughn* index constitute only boilerplate rationales for invoking Exemption 1 and fail to provide sufficient detail to demonstrate a "facially reasonable concern" for national security.  Pl.'s Opp'n at 21 (citing *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d

44, 54 (D.D.C. 2004)).  The defendant retorts that the Lambert declaration is sufficiently specific because it "identifies the categories of information classified, the harm to national security that would result from the disclosure of information from each category, and ties each document for which Exemption 1 is claimed to the particular category of classified information in that document."  Def.'s Reply at 12-13.

While vague and conclusory affidavits are insufficient because they do not allow the court "to safeguard the public's right of access to government records, the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."  *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (citing *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir.1980)).  The plaintiff correctly asserts that the defendant must "describe with reasonable specificity the material withheld and demonstrate that it has specifically tailored its description of the harm likely to result from release to each particular redaction,"  Pl.'s Opp'n at 22 (citing *King*, 830 F.2d at 223-24).

The court determines that although the *Vaughn* index is repetitive, "it is not mindlessly so."  *Coldiron*, 310 F. Supp. 2d at 54.  The defendant withheld many of the materials based on the same or similar security concerns, but the *Vaughn* index offers an individualized assessment of each document withheld under Exemption 1.  *See* Lambert Decl. ¶¶ 44-50; *Vaughn* index. Further, the Lambert declaration explains that its withholdings were based in part on the "mosaic" theory, which posits that pieces of information that are innocuous on their own can create a security threat when viewed as a whole.  Lambert Decl. ¶¶ 21-22 (stating that "[w]hile the disclosure of a single regulation or part of a regulation may appear harmless, such information may be very valuable as part of a 'mosaic' of information gleaned from various

11

sources, including regulations or pieces of regulations, collected over time").  As a result, the court concludes, based on the Lambert declaration and the *Vaughn* index, that the defendant has satisfied its burden of offering a "plausible assertion" that the information withheld was properly classified.  *Morley*, 508 F.3d at 1124.  And the court in turn defers to the defendant's "facially reasonable concerns" regarding the damage that disclosure of the withheld documents would cause to national security.  *See* Lambert Decl. ¶¶ 44-50, 55; *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999); *Military Audit Project*, 656 F.2d at 738.  Accordingly, the court holds that the defendant properly invoked Exemption 1 in withholding information that the plaintiff requested.

### c.  Legal Standard for Exemption 2 Withholding

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  Information is exempt under Exemption 2 if it meets two criteria.  First, the information must be "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (*en banc*); *see also Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985).  Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest."  *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations omitted).

Materials exempt under Exemption 2 fall into two categories: "high 2" and "low 2." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  "Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption."  *Id.*  "Low 2" exempt materials include such

items as "file numbers, initials, signature and mail routing stamps, references to interagency

transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir.

1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979), and other "trivial

administrative data such as . . . data processing notations[] and other administrative markings,"

*Coleman v. FBI*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

### d. The Defendant Properly Invoked Exemption 2

### i. "High 2" Exemption

The defendant contends that it properly invoked the "high 2" exemption to withhold

internal security policies and procedures associated with CIA employees and foreign nationals.

Def.'s Mot. at 22-23.  Disclosure of such information, the defendant maintains, would

significantly risk circumvention of federal statutes or regulations by "affect[ing] the behavior of

the foreign nationals addressed in the regulations" and "provid[ing] foreign intelligence services

with keen insights on how to circumvent the CIA's security regulations."  *Id.* at 22.  Similarly,

information related to CIA training procedures and information revealing security clearance

procedures and policies would render the procedures vulnerable and weaken their effectiveness.

*Id.*  The defendant also notes that disclosure of the information withheld, even if harmless in

isolation, could risk circumvention of federal statutes or regulations if foreign intelligence

services employed the "mosaic" approach.  *Id.* at 23.

The plaintiff responds that the defendant has failed to demonstrate specifically how

federal regulations would be rendered "operationally useless" if disclosed.  Pl.'s Opp'n at 30.

The plaintiff claims that the defendant must, at a minimum, provide enough particularity and

context for the court to determine that the regulations are protected from disclosure.  *Id.* at 30-31.

The plaintiff maintains that discovery is needed for the court to make this determination.  *Id.* at 31.  The defendant counters that because the *Vaughn* index describes precisely what information was withheld under the "high 2" exemption, it has satisfied its burden and discovery is unnecessary.  Def.'s Reply at 16-17.

As a threshold matter, the court determines that because the documents withheld under the "high 2" exemption are internal CIA policies and procedures, *see* Lambert Decl. ¶ 66, the defendant satisfies the initial requirement of predominant internality, *see Schiller*, 964 F.2d at 1207.  In addition, the court determines that the defendant has described with adequate specificity how disclosure of its security policies and procedures would create the risk that those policies could be circumvented.  *See* Lambert Decl. ¶¶ 66-68 (stating that foreign intelligence services could circumvent the CIA's internal security regulations if the regulations were disclosed, warning that disclosure of CIA training procedures and security clearance procedures and policies could weaken the efficacy of those procedures because adversaries would have "keen insights into the CIA's operational and training methods," and noting that disclosure of even harmless information withheld could risk circumvention of federal statutes or regulations if foreign intelligence services employed the "mosaic" approach).  Accordingly, the court concludes that the defendant properly invoked the "high 2" exemption.

### ii.  "Low 2" Exemption

The defendant also invokes the "low 2" exemption to withhold some of the documents responsive to the plaintiff's request, including job titles and codes, personnel procedures and information concerning employee benefits.  Def.'s Mot. at 24-25.  The defendant asserts that this information relates to internal matters of a trivial nature and is thus properly withheld under the

"low 2" exemption.  *Id.* at 25.  The plaintiff's objection to the defendant's invocation of the "low 2" exemption mirrors its objection to the invocation of the other exemptions.  That is, the plaintiff claims that the defendant has provided only vague, boilerplate explanations to support its claim that the materials withheld under the "low 2" exemption are "internal matters of a relatively trivial nature."  Pl.'s Opp'n at 32-33.  The plaintiff points out that it is the defendant's burden to establish that the documents withheld are too trivial to warrant disclosure, and the plaintiff claims that the defendant has failed to satisfy this burden.  *Id.*  The defendant responds that to the contrary, the *Vaughn* index describes precisely what information was withheld, which is all that is required of it.  *Id.* at 18-20.

The defendant has the burden of establishing, through affidavits, that the materials withheld under the "low 2" exemption "relate[] solely to the [defendant's] internal personnel rules and practices" and are used predominantly for internal purposes.  *Schiller*, 964 F.2d at 1207 (quoting 5 U.S.C. § 552(b)(2)).  The court holds that the defendant has met this burden by specifying that the documents withheld have only internal application and do "not purport to regulate the public's activities or set standards CIA personnel must follow when deciding whether to proceed against or take action affecting members of the public."  Lambert Decl. ¶ 69.  Further, the court rejects the plaintiff's claim that the defendant has provided only boilerplate justifications for its invocation of the exemption.  The defendant has described in the Lambert declaration and the *Vaughn* index precisely what regulations it has withheld.  Lambert Decl. ¶¶ 69 (stating that the defendant withheld "job titles, employee grievance procedures, procedures for performance evaluations, occupational codes, grades, reassignment procedures, guidelines for Exceptional Performance Awards, and eligibility criteria for benefits specific to CIA employees

and their families," as well as "policies on employment of uniformed service members, employee

health and life insurance policies, child care policies, income tax withholding and reporting

procedures, dispute resolution procedures for employee-related internal disputes, and internal

procedures for employment-related complaints"); *id.* ¶ 71 (stating that the defendant withheld

"the names and position titles of CIA employees with original classification authority"); *id.* ¶ 72

(stating that the defendant withheld "internal agency personnel policies for employees and

managers to resolve security-related issues, and related tracking and recordkeeping information

associated with those functions"); *see also Vaughn* index; *cf. Miller v. Dep't of Justice*, 562 F.

Supp. 2d 82, 108 (D.D.C. 2008) (holding that the defendant had "sufficiently justifie[d] its

decision to withhold" information under the "low 2" exemption).  As a result, the court holds that

the defendant properly invoked the "low 2" exemption.

### e.  Legal Standard for Exemption 3 Withholding

Exemption 3 allows an agency to withhold or redact records that are "specifically

exempted from disclosure by statute . . . provided that such statute (A) requires that the matters

be withheld from the public in such a manner as to leave no discretion on the issue, or (B)

establishes particular criteria for withholding or refers to particular types of matters to be

withheld."  5 U.S.C. § 552(b)(3).  In other words, the statute must "on its face, exempt matters

from disclosure."  *Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice*, 816 F.2d

730, 735 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir.1987), *rev'd on other

grounds*, 489 U.S. 749 (1989).

16

### f.  The Defendant Properly Invoked Exemption 3

The defendant relies on the National Security Act, 50 U.S.C. § 403-1(i)(1), and the CIA Act, 50 U.S.C. § 403g, to justify its withholdings under Exemption 3.[1]  Def.'s Mot. at 16-20. The National Security Act charges the Director of National Intelligence with "protect[ing] intelligence sources and methods from unauthorized disclosure," Def.'s Mot. at 17 (citing 50 U.S.C. § 403-1(i)(1)), and the CIA Act "authorizes the CIA to withhold 'intelligence sources' and 'intelligence methods' that are related to the CIA's core function," Def.'s Mot. at 18 (citing 50 U.S.C. § 403g).  Pointing out that these two withholding statutes do not require it to identify the damage to national security that could result from disclosure, the defendant contends that the Lambert declaration – which determines that the internal regulations withheld contain information that would lead to the disclosure of intelligence methods – is entitled to substantial weight.  Def.'s Mot. at 19; *see also* Reply at 8 (stating that "*all* of the CIA's internal regulations, as documents describing the internal practices and procedures used by the CIA, contain intelligence methods that are absolutely protected from disclosure").

The plaintiff concedes that the defendant need not make a specific showing of potential harm to national security, Pl.'s Opp'n at 25, but maintains that the defendant has failed to satisfy its burden because it has offered only vague and conclusory affidavits to demonstrate that the information in the regulations falls within the scope of either statute, *id.* at 26-27.  The defendant counters that the Lambert declaration and the *Vaughn* index properly detail its Exemption 3 withholdings.  Def.'s Reply at 8-9.  Moreover, the defendant asserts that requiring it to provide the amount of detail that the plaintiff seeks would improperly require a showing of potential

---

[1]    The plaintiff concedes that the National Security Act and the CIA Act qualify as withholding statutes.  Pl.'s Opp'n at 25.

harm to national security. *Id.* at 9. Finally, the defendant states that because the definition of "intelligence methods" is broader than the plaintiff understands it to be, Exemption 3 protects more information based on the fact that it would lead to the disclosure of intelligence methods. *Id.* at 9-10.

When analyzing whether the defendant is entitled to invoke Exemption 3, the court need not examine "the detailed factual contents of specific documents" withheld; rather, "'the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.' It is particularly important to protect intelligence sources and methods from public disclosure." *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)). Because the parties agree that the National Security Act and the CIA Act are the two relevant withholding statutes, the court's sole task is to determine whether the withheld material falls within the statutes' coverage, taking into account the importance of preventing the disclosure of intelligence methods. *Morley*, 508 F.3d at 1126.

The Lambert declaration asserted that the information the defendant withheld under Exemption 3 included the CIA's special practices and procedures; CIA employees' identification numbers, job titles and telephone numbers; agency regulation numbers; and internal information concerning the CIA's organizational structure, and concluded that in the defendant's judgment, disclosure of the information withheld would reveal CIA sources, methods, organization and functions by "provid[ing] insights as to the CIA's capabilities, accomplishments, methodologies, and judgments over time." Lambert Decl. ¶¶ 62-64. Applying the "special deference owed to agency affidavits on national security matters," the court determines that the Lambert declaration

adequately demonstrates that the internal CIA documents withheld contain information that would risk disclosing the defendant's intelligence methods in contravention of the National Security Act and the CIA Act. *Morley*, 508 F.3d at 1126. Accordingly, the court holds that the defendant properly invoked Exemption 3.

### g. Legal Standard for Segregability Requirement

FOIA mandates that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). By 1977, it had "long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated for this reason." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir.1996)). The D.C. Circuit has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984). In fact, the segregability requirement is so essential to a FOIA inquiry that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (D.C. Cir. 1992) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

To demonstrate that the withholding agency has disclosed all reasonably segregable material, the agency must supply "a detailed justification for [its] decision that non-exempt

19

material is not segregable." *Mead Data*, 566 F.2d at 261.  The agency, however, is not required

to provide so much detail that the exempt material effectively would be disclosed.  *Id.*

Furthermore, conclusory language in agency declarations that do not provide a specific basis for

segregability findings by a district court may be found inadequate.  *Animal Legal Def. Fund, Inc.*

*v. Dep't of Air Force,* 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (Kollar-Kotelly, J.).  The D.C.

Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of

'conclusory assertions,'" noted that "it is enough that where no factual support is provided for an

essential element of the claimed privilege or shield, the label 'conclusory' is surely apt."  *Senate*

*of P.R. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

### h.  The Defendant Properly Segregated Exempt Material from Non-Exempt Material

The defendant states that it "has provided Plaintiff with as much non-exempt information

as possible without compromising the interests in nondisclosure protected by the FOIA."  Def.'s

Mot. at 26.  The plaintiff disputes this assertion, arguing that the defendant fails to present "any

credible evidence that segregable portions of the records in question cannot be released."  Pl.'s

Opp'n at 34.  The plaintiff contends that by declaring simply that "it determined that any non-

exempt information is so inextricably intertwined with the exempt information that there are no

meaningful, reasonably segregable, non-exempt portions," the defendant has failed to fulfill its

obligation to describe the process by which its segregability determinations were made.  *Id.* at 34

(citing Lambert Decl. ¶ 76).  The defendant responds by pointing out other portions of the

Lambert declaration and the *Vaughn* index that describe the process by which the defendant

reviewed documents for segregability and the reasons why additional information could not be

released.  Def.'s Reply at 20 (citing Lambert Decl. ¶¶ 16, 17, 19, 20-23, 70, 75-76).

The Lambert declaration states that Information Management Services ("IMS") personnel "reviewed the responsive regulations to determine whether . . . any non-exempt information was reasonably segregable from exempt information."  Lambert Decl. ¶ 16.  Lambert, the director of IMS, then reviewed and upheld their determinations.  *Id.*  The Lambert declaration further points out that "redacting the requested regulations does not resolve the problem" justifying the exemptions because disclosure of even a portion of sensitive documents creates a security risk. *Id.* ¶ 23.  The court concludes that this explanation constitutes a sufficiently detailed justification for the defendant's determination that non-exempt material is not segregable without creating the risk that exempt material would be disclosed.  *See Mead Data*, 566 F.2d at 261.  Accordingly, the defendant has satisfied its burden of establishing that no portion of the withheld documents can be segregated and released to the plaintiff.  *Juarez*, 518 F.3d at 61.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.[2]  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 19th day of March, 2009.

RICARDO M. URBINA
United States District Judge

---

[2]     As a result, the court rejects as moot the plaintiff's contention that it is entitled to discovery on this motion.  *See* Pl.'s Opp'n at 35-38.